ARLAN'S DEPARTMENT STORES, INC., *v.*
ATTORNEY GENERAL.
ALLEN *v.* SAME.

CONSTITUTIONAL LAW—POLICE POWER—SALES ON SUCCESSIVE SATUR-
DAY AND SUNDAY—DELEGATION OF POWER TO COUNTIES—VAGUE
CRIMINAL STATUTE.

Provision of State statute barring sale by certain merchants of
various articles and merchandise on any successive Saturday
and Sunday, which allowed boards of supervisors to permit
the sale of specific items prohibited by the act, constituted an
improper delegation of legislative power· in that it permitted
action affecting only such county variant of statewide policy,
per KAVANAGH, C. J., KELLY, BLACK, SOURIS, SMITH, and
ADAMS, JJ.; and imposes criminal liability in language so
vague and contradictory as to render its enforcement impossible
(P.A. 1962, No 128), per DETHMERS and O'HARA, JJ.

Appeals from Wayne; Rashid (Joseph G.), J.
Submitted April 9, 1964. (Calendar Nos. 30, 31,
Docket Nos. 50,332, 50,340.) Decided November 2,
1964.

Complaint by Arlan's Department Stores, Inc., a
New York corporation, other similarly named de-
partment stores, and various merchants and af-
filiates operating departments, against Frank J.
Kelley, Attorney General of the State of Michigan,
Joseph A. Childs, Commissioner of State Police,
the prosecuting attorneys of various counties, and

REFERENCES FOR POINTS IN HEADNOTE
16 Am Jur 2d, Constitutional Law § 552.

numerous counties and municipal corporations, to declare a Sunday closing law unconstitutional and to enjoin enforcement thereof. Michigan Retailers Association, a voluntary association, and various retail merchandising associations intervened as parties defendant.

Similar complaint by Lafayette Allen, Jr., and other owners and operators of independent food markets.

Actions consolidated in circuit court and on appeal. Summary judgment for defendants. Plaintiffs appeal. Reversed, with statute held unconstitutional.

*Honigman, Miller, Schwartz & Cohn (Jason L. Honigman, Alan E. Schwartz, John Sklar,* and *Asher Rabinowitz,* of counsel) for plaintiffs Arlan's Department Stores, Inc., and its affiliates.

*Bashara & Bashara (George Bashara, Sr.,* and *William L. Coash,* of counsel), for plaintiffs Allen and independent store operators.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Franklin J. Rauner,* Assistant Attorney General, for defendants Attorney General and Commissioner of State Police.

*Samuel H. Olsen,* Prosecuting Attorney· (*George H. Cross,* Assistant Prosecuting Attorney, of counsel), for defendant County of Wayne.

*Robert W. Reese,* Corporation Counsel (*Robert D. McClear,* Assistant Corporation Counsel), for defendant City of Detroit.

*Dykema, Wheat, Spencer, Goodnow & Trigg*
(*James H. Spencer, Nathan B. Goodnow, Donald E.
Shely,* and *Richard E. Rabbideau,* of counsel), for
intervening defendants.

ADAMS, J. These actions were filed to seek a
declaratory judgment and to enjoin enforcement of
PA 1962, No 128 (CL 1948, § 435.51 *et seq.* [Stat
Ann 1963 Cum Supp § 18.857(1) *et seq.*]). Since
the issues were identical, the cases were consolidated
for decision and determination. We make disposi-
tion of both by this opinion. Plaintiffs, operators of
retail stores, sought to have the act declared un-
constitutional and invalid. The circuit court, on
motions for summary judgment heard considerable
testimony, dismissed the complaints, and entered
judgments for the defendants. Plaintiffs appeal.

The act purports to be "to promote the health,
recreation and welfare of the State." It forbids
the sale by certain merchants on any successive
Saturday and Sunday of various articles and mer-
chandise. The act makes any violation of it a mis-
demeanor, subject to a fine of not more than $100
for the first offense and not more than $500 for the
second and subsequent offenses. A court may sus-
pend or revoke the license to do business of any per-
son so convicted. The operation of any business
contrary to the act is declared to be a public nuisance,
subject to proceedings to enjoin the same. Any
transaction in violation of the act is voidable at the
option of the purchaser within one year upon tender
of the property sold. Since it is a penal statute it
must be strictly construed. *People* v. *Goulding,* 275
Mich 353; *In re Bourne,* 300 Mich 398.

First, how does the act accomplish its purpose?
Each merchant may make his own election whether
to sell on Saturday or Sunday. The regulation here

sought cannot be of the articles sold, since it cannot be foreseen what the effect of the law will be in this regard. Sunday sales could be in no way affected as all merchants might and could elect to remain open on Sunday rather than Saturday. The act does not tend to create a single day of rest as was the purpose of the laws in *McGowan* v. *Maryland,* 366 US 420 (81 S Ct 1101, 1153, 1218, 6 L ed 2d 393); *Two Guys From Harrison-Allentown, Inc.,* v. *McGinley,* 366 US 582 (81 S Ct 1135, 1153, 1218, 6 L ed 2d 551); and *Braunfeld* v. *Brown,* 366 US 599 (81 S Ct 1144, 1153, 1218, 6 L ed 2d 563).

If the law is not aimed at the regulation of the sale of merchandise so as to reduce commercial activity on one day in seven, can it be said that its purpose is to achieve one day of rest in seven for employees of these establishments? The law in no way controls or attempts to control the hours of labor of an employee. It merely prevents the use of labor on successive Saturdays and Sundays by the affected merchants. The employee who works Saturday for one merchant is free to work Sunday for another.

What does the act accomplish? As to the merchant who has elected to carry on his business Monday through Saturday, or Sunday through Friday, absolutely nothing. His operation is unaffected. As to the merchant whose operation was based upon a 7-day week, he now must forego either Saturday or Sunday—one of his two, it is alleged, most profitable days.

In the case of *Carolene Products Co.* v. *Thomson,* 276 Mich 172, this Court was called upon to interpret a somewhat similar statute. In that case the statute attempted to forbid the sale of milk to which had been added any fat or oil other than milk fat. Justice FEAD said (p 178):

"But the police power of regulation does not include the absolute prohibition of trade in useful and harmless articles of commerce. * * *

"The principles involved are well settled and do not need extensive citation of authorities. The Constitution guarantees to citizens the general right to engage in any business which does not harm the public. *People, ex rel. Valentine, v. Berrien Circuit Judge,* 124 Mich 664 (50 LRA 493, 83 Am St Rep 352). The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud. *In the exercise of the police power there must be not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose.* 12 CJ, Constitutional Law § 441, p 929." (Emphasis supplied.)

The statute was declared in violation of the constitutional right to do business, secured under the due process clause of the Fourteenth Amendment to the United States Constitution, and article 2, § 16, of the Michigan Constitution (1908).

Again in the case of *Ritholz* v. *City of Detroit,* 308 Mich 258, where the city of Detroit attempted by ordinance to forbid the advertisement of the price of eyeglasses, the Court held that in the exercise of the police power there must not only be a public welfare to be conserved or a public wrong to be corrected but there must be a reasonable relation between the remedy adopted and the public purpose. Whether such relation exists is a question for the courts to determine. It was held (p 275) that a city ordinance prohibiting such advertising had no relation to public health and was an unlawful interference with private business. The ordinance was declared void as being in violation of the Fourteenth

Amendment of the United States Constitution. (See, also, *Levy* v. *City of Pontiac,* 331 Mich 100, for a similar holding as to the price of gasoline.)

In the case of *People, ex rel. Valentine,* v. *Berrien Circuit Judge,* 124 Mich 664 (50 LRA 493, 83 Am St Rep 352), a statute attempted to require a $5,000 bond, conditioned for the faithful performance of their contracts, of merchants who sold farm produce upon commission. The statute was declared void as an unjustifiable interference with the right of citizens to carry on legitimate business, the Court saying (p 666):

"There is no more reason why a commission merchant should pay a license fee, and execute a bond to pay his debts and to do his business honestly, than there is that any other merchant should pay a like fee, and file a like bond to properly do his business and pay his debts. The business requires no regulation, any more than any other mercantile pursuit. There is nothing in it hostile to the comfort, health, morals, or even convenience, of a community. It is carried on by private persons in private buildings, and in a manner no different from that in which the merchant selling hardware or groceries or dry goods carries on his business. The law can find no support in the police power inherent in the State."

Since it appears that the sole and only objective of PA 1962, No 128, is to eliminate, or at least reduce, competition, since the general welfare is neither enhanced nor promoted, and since no evil is eliminated by the act, it must be concluded that it is not a valid and proper exercise by the legislature of its police power.

Appellants contend that section 9 of the act, even if it were valid regulation, unconstitutionally delegates to counties the right to determine the extent

to which, if at all, the law shall be applied within a particular county. Section 9 of the act provides:

"In any county by action of the board of supervisors, the board,' after notice and hearing and with the concurrence of 2/3 of the members elect, *may permit the sale of specific items* prohibited by this act." (Emphasis supplied.)

A fair reading of this provision can only mean that any or all items prohibited by the act may be sold within a county by action of its board of supervisors. A substantial number of Michigan's 83 counties have presently elected to permit sale of all items prohibited by the act.

On the other hand, appellees contend that under section 9 counties are properly delegated power to determine the extent to which the act should apply, based upon local needs which vary widely from county to county. They rely upon article 8, § 8, Michigan Constitution of 1908, which provided:

"The legislature may by general law confer upon the boards of supervisors of the several counties such powers of a local, legislative and administrative character, not inconsistent with the provisions of this Constitution, as it may deem proper."

The Michigan Constitution of 1963 permits delegation of powers at least as broadly as before. Article 7, § 8, Const 1963, provides:

"Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law."

Article 7, § 34, provides in part:

"The provisions of this Constitution and law concerning counties, * * * shall be liberally construed in their favor. Powers granted to counties

* * * by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution."

Counties properly are delegated legislative powers over county affairs. This is similar to the legislative powers that may be granted to municipalities over their affairs and to townships over theirs. The Constitution does not permit counties to determine legislative policies of *statewide* concern, nor does it permit the State legislature to delegate such power. *Attorney General, ex rel. Lennane,* v. *City of Detroit,* 225 Mich 631.

Section 9 (CL 1948, § 435.59 [Stat Ann 1963 Cum Supp § 18.857(9)]) violates the principle of legislative delegation of power because, while purporting to be a State law, it permits each county to change the State law to suit its own purposes. This is not delegation of authority to a county to enact a local county ordinance. Nor is the supervisors' choice either to come under a State law by taking no action or to avoid the law's effect within the county by a two-thirds vote. Rather, each board of supervisors has an unlimited number of choices, since a board may permit the sale of *any* or *all* of the prohibited items. The provisions of a purported State law therefore become dependent upon action which may be taken by the boards of supervisors of Michigan's 83 counties and could differ from county to county throughout the State.

Both the 1908 and 1963 Constitutions provide* that:

"The legislative power of the State of Michigan is vested in a senate and a house of representatives."

A county cannot, by action which affects only that county, be permitted to alter the statewide policy.

* Const (1908), art 5, § 1. Const (1963), art 4, § 1.—REPORTER.

We conclude that the act is an improper delegation of legislative power. We do not consider other claims of invalidity of the act because it is not necessary to do so for disposition of these cases.

No costs, a public question being involved.

Black and Souris, JJ., concurred with Adams, J.

Kavanagh, C. J. (*concurring*). I cannot accept the disposition of the first issue in this case, namely, whether P.A 1962, No 128 (CL 1948, § 435.51 *et seq.* [Stat Ann 1963 Cum Supp § 18.857(1) *et seq.*]), is a valid and proper exercise by the legislature of its police power.

Justice Adams' opinion relies upon the fact that the Michigan legislature has provided for a flexibility in its closing law which will allow more freedom to the merchants affected than did the statutes under attack in the 1960 United States Supreme Court decisions (*McGowan* v. *Maryland,* 366 US 420 [81 S Ct 1101, 1153, 1218, 6 L ed 2d 393]; *Two Guys From Harrison-Allentown, Inc.,* v. *McGinley,* 366 US 582 [81 S Ct 1135, 1153, 1218, 6 L ed 2d 551]; and *Braunfeld* v. *Brown,* 366 US 599 [81 S Ct 1144, 1153, 1218, 6 L ed 2d 563]), and declares that *because* of that flexibility, the Michigan statute is unconstitutional. When the supreme arbiter of the land declares statutes to be not so oppressive as to be invalid exercises of the police power, the finding by any other court that a more flexible statute is too oppressive deserves close scrutiny.

The indictment of the Michigan statute centers about the alternative provision that the weekly day of rest may be either Sunday or Saturday, the election to be made by each merchant. Such a provision is obviously less restrictive on merchants than a law requiring no sales on Sunday except for a few specified items. Yet it is said that *since* the act is

less restrictive in that it "does not tend to create a single day of rest as was the purpose of the laws" in *McGowan, Two Guys From Harrison-Allentown, Inc.,* and *Braunfeld, supra,* it is an improper exercise of the police power.  It is further said "Sunday sales could be in no way affected as all merchants might and could elect to remain open on Sunday rather than Saturday."  If this possibility became an actuality, the act would still be achieving a purpose approved in *McGowan,* to create a day of rest. If Saturday were to become the customary day of rest, a valid purpose would be accomplished in Saturday closing.

As to the argument that 1 purpose of Sunday closing laws is to "achieve 1 day of rest in 7 for employees" and that the Michigan act fails in that the employee can work at another job on the seventh day, the purpose of the act seems to be to prevent the forced labor, under threat of losing their jobs, of employees for 7 days per week.

In regard to the 7-day merchant, who must forego 1 of his 2 allegedly most profitable days, and as to anyone whose religious convictions require him to close on a day other than Saturday or Sunday, the prevailing opinion of Chief Justice Warren in *Braunfeld* v. *Brown,* 366 US 599, 603, 605, lends resolutionary light:

"Concededly, appellants and all other persons who wish to work on Sunday will be burdened economically by the State's day of rest mandate.  *  *  * But, again,  *  *  *  the Sunday law simply regulates a secular activity and, as applied to appellants, operates so as to make the practice of their religious beliefs more expensive."

Chief Justice Warren goes on to state that because there is a valid welfare purpose behind such an exercise of the police power, "we cannot find a State with-

out power to provide a weekly respite from all labor." (p 607)

Concluding the disposition of this issue, the opinion of Justice Adams cites several cases in which the remedy adopted was found to bear no reasonable relation to the public welfare to be conserved, and then summarily declares not only that the remedy in this case bore no reasonable relation to the public welfare, but "it appears that the *sole and only* objective of PA 1962, No 128, is to eliminate, or at least reduce, competition." (Emphasis supplied.) Such cursory treatment, based upon other *ad hoc* determinations of the validity of statutes and ordinances, all very different in structure and purpose from the one at hand, is not persuasive. This appears to be an attempt to make this more liberal statute appear less a valid restriction than that in the *McGowan, Two Guys From Harrison-Allentown, Inc.,* and *Braunfeld Cases, supra,* and thus avoid applying the rules there laid down. In this action I cannot concur.

I concur with the majority, however, to the extent that section 9 of the statute is a constitutionally invalid delegation to counties of legislative power, and on that basis alone would strike down the statute.

KELLY and SMITH, JJ., concurred with KAVANAGH, C J.

O'HARA, J. (*concurring*). PA 1962, No 128 is unconstitutional for so many reasons it offers the member of a multi-judge appellate court an attractive variety of bases upon which so to hold.

I am content to rest my concurrence herein on the ground that it imposes criminal liability in language so vague and contradictory as to render its enforcement ludicrously impossible and farcical. For example, the sale of clothing is prohibited except "rainwear." Is Bulldog Drummond's traditional trench

coat exempted or included? He wears it, rain or shine, as I do mine. Optical goods are included, sun glasses excluded. If the lenses are tinted, do prescription glasses become sun glasses? Mattresses are prohibited unless the mattress is primarily intended for outdoor camping; then it is exempted. Does the clerk obtain an affidavit attesting it for outdoor camping use only? Pet supplies are barred, except food. If the owner demands ground sirloin for pampered Phydo, does the harried merchant sell it? Grooming supplies are not prohibited except power operated devices. If the beep-beep blade user is shaved by another, does his razor become a power-operated shaver? When is plumbing equipment which is barred become "emergency plumbing" equipment which is permitted? Must the purchaser wait until the emergency has become socially menacing, or may he anticipate the emergency and, if so, by how long? Most intriguing is the test to be applied to athletic equipment necessary to participate in recreational activities. If the item is to be used "on the premises where it is sold" or "within 1 mile, measured directly" the sale has the act's blessing. If not, the sale subjects the seller to fines of up to $500. Does the clerk make a daily tour of the area "of 1 mile, measured directly" to see if there are baseball diamonds, golf courses, miniature and otherwise, ski tows, swimming pools, et cetera, *ad infinitum?* Even with this intelligence, who follows the purchaser to see that he doesn't utilize his new golf clubs at a course more distant than a mile?

If the high and lofty motive of one-day closing per week is to be attained under its proclaimed banner of "protecting all persons from physical and moral debasement which comes from uninterrupted labor," the statute enacted to accomplish it, when it makes violation criminally punishable, must be definite and certain enough so that violation thereof

becomes ascertainable in some manner other than by extra-sensory perception, moon gazing, or resort to a crystal ball.

I too hold the act to be unconstitutional.

DETHMERS, J., concurred with O'HARA, J.