The STATE of Texas, Appellant,

v.

SPARTAN'S INDUSTRIES, INC. et al., Appellees.

No. B–1255.

Supreme Court of Texas.

Nov. 5, 1969.

Judgment reversed and cause remanded.

James E. Barlow, Dist. Atty., San Antonio, Soloman Casseb, Jr., Bruce Robertson, John Gilliland, San Antonio,

Crawford Martin, Atty. Gen., Monroe Clayton, Asst. Atty. Gen., Austin, for appellant.

Bloch & Walton, William H. Bloch, Corpus Christi, Lang, Cross, Ladon, Oppenheimer & Rosenberg, James D. Stewart, San Antonio, Oscar Spitz, Corpus Christi, Kampmann, Kampmann, Church & Burns, George A. Kampmann, San Antonio, Berman & Fichtner, Jay S. Fichtner, Dallas, for appellees.

REAVLEY, Justice.

The question in this case is the constitutionality of the Sunday (or Saturday) closing law, Article 286a. Vernon's Ann. Texas Penal Code. We uphold the statute.

The suit was brought by the District Attorney of Bexar County, acting in the name of the State, to enjoin four discount stores operating in Bexar County, Spartan Industries, Inc., Barker's of San Antonio, Inc., Shoppers World of San Antonio, Inc. and Globe Stores, Inc., together with certain employees, from selling certain items of merchandise on the two consecutive days of Saturday and Sunday in violation of Article 286a. The defendants attacked the constitutionality of the statute in extensive pleadings, and the trial court agreed with their arguments when the case came on for trial. No statement of facts is before us, and the briefs state that no evidence was heard by the trial court.

## JURISDICTION

■ The State has taken a direct appeal to this court under the terms of Article 1738a, Vernon's Ann.Texas Civil Statutes. A question of jurisdiction must be faced. It arises because the trial court judgment decrees "that each of the said Pleas in Abatement be and the same are hereby sustained, and that this cause be and the same is hereby dismissed * * *" This disposition of the case, if we were not to look behind the recitation, would not fit the requirement of Article 1738a, which provides that direct appeals to this court may be taken from orders of trial courts "granting or denying an interlocutory or permanent injunction on the ground of the constitutionality or unconstitutionality of any statute * * *." Upon reading the full transcript we find that defendants' only ground for their "plea in abatement" was the unconstitutionality of the statute. The trial court gives the unconstitutionality ·of the statute as the reason for its judgment and decrees "that Plaintiff, the State of Texas, take nothing by its suit for injunctive relief against the Defendants * * *" We treat the so-called plea in abatement as a plea in bar and, since the trial court's take-nothing judgment could be the only intended judgment, the language as to the dismissal is disregarded as meaningless. When the judgment is thus interpreted, it denied the permanent injunction sought by the State on the ground of the unconstitutionality of Article 286a, and this court has jurisdiction of the direct appeal.

This holding may be compared to the one in Touchy v. Houston Legal Foundation, 432 S.W.2d 690 (Tex.Sup.1968). In Touchy, the defendants filed a plea in abatement based on lack of standing of the plaintiffs to maintain the suit, and also filed a motion for summary judgment that plaintiff take nothing. The trial court heard the two pleas at the same time and rendered judgment reciting that the plea in abatement was sustained and the cause was dismissed, and further reciting that the motion for summary judgment was granted. Since the asserted ground of the plea in Touchy was a proper ground of abatement, we dealt with that ground and with the action of the trial court in dismissing the case. If the trial court could not have reached the merits of the case, its recitation of a ruling on the summary judgment motion had to be regarded as meaningless. In the case at hand, there was no ground for abatement and we regard the language as to abatement and dismissal as meaningless.

The corporate defendants first argue that Section 1 of Article 286a prohibits consecutive day sales by "any person," and that this must be construed to apply only to natural persons and not to corporations. Since this question is entirely separate from any constitutional issue, we decline to consider it on the ground of the limitation of our jurisdiction in a direct appeal. Halbouty v. Railroad Commission of Texas, 163 Tex. 417, 357 S.W.2d 364 (Tex.Sup.1962).

Article 286a was enacted by the Legislature in 1961. Section 4a of the statute as originally enacted permitted the sale of otherwise prohibited commodities when the purchaser certified to the seller that his need of the item was an emergency. The construction of this section brought the statute to this court in 1964 in State v. Shoppers World, Inc., Tex., 380 S.W.2d 107. The question there was whether the seller could rely on the purchaser's certificate, or whether the statute required that there be no sale in the absence of an actual emergency. The court upheld Sec. 4a by construing it not to require an objective determination by the seller. The State argues in the case before us that this court has already determined the constitutionality of Article 286a in its entirety, but the opinion makes it quite plain that the attack on Sec. 4a was the only constitutional issue considered. The defendant there had obtained certificates from its purchasers and, as the law was construed by this court, there had been no violation. The court of civil appeals had properly ruled that the State was not entitled to an injunction, and there was no cause for this court to rule further.

The Legislature removed Sec. 4a from this Article in 1967.

Citing Article I, Sections 15, 17 and 19 of the Texas Constitution, and Article XIV of the United States Constitution, appellees contend that Article 286a discriminates against them and denies them equal protection or immunity, that it denies them due process of law by virtue of vagueness or uncertainty of the prohibited act, that it takes or damages their business or property without compensation, that it authorizes the injunction of a nuisance where there is no nuisance in fact and thus denies the right to a jury trial on that issue, and that it denies them due process by prohibiting or unduly oppressing a lawful business in a manner which has no reasonable relation to the public health and welfare. Finally, they contend that the caption of the original Act of the Legislature failed to comply with Article III, Section 35 of the Texas Constitution.

The statute has been upheld against similar attack in two of the courts of civil appeals in three opinions: Spartan Industries, Inc. v. State, 379 S.W.2d 931 (Tex.Civ.App.1964, no writ); Hill v. Gibson Discount Center, 437 S.W.2d 289 (Tex. Civ.App.1968, writ ref. n. r. e.); State v. Sundaco, Inc., 445 S.W.2d 606 (Tex.Civ. App., 1969, writ ref. n. r. e.).

## EFFECT AND OBJECTIVES OF THE STATUTE

Before weighing specific constitutional appeals against the precedents, we should understand what the Legislature has done by its enactment of Article 286a. We may as well decide at the outset whether this enactment has a reasonable relation to the public welfare. Has the Legislature arbitrarily interfered with the merchants of Texas, or can it be said that a proper objective is served by this law? Whether the statute is a legitimate exercise of the police power of the state is central to most of the questions now before us.

The full text of Article 286a is set forth in the appendix following this opinion. It specifically provides in Sec. 5a that the older Sunday closing laws are not repealed. Articles 286 and 287, Texas Penal Code, still prohibit sales, or the opening of a place of business, by any merchant and trader (subject to certain

exceptions for drug stores, hotels, restaurants, etc.). The penalty for violation of Article 286 is a fine of not less than twenty nor more than fifty dollars.

Article 286a enumerates a long list of articles from clothing to motor vehicles, and gives the business man the choice of trading on either Saturday or Sunday, but provides that if he sells on both days, he may be subjected to injunction or greater penal penalty.

■ To weigh the full effect of Article 286a we must decide whether it prohibits the sale by the same person of one or more of the named articles on Sunday when different articles, but ones named in the statute, were sold on the preceding Saturday. Thus, could a merchant close off his appliance department on Saturday and then operate on Sunday with nothing but his appliance department open? We construe the statute to prohibit this. It says that any person who sells on both days shall be guilty of a misdemeanor. Who sells *what*? Who sells *"any* clothing; clothing accessories; wearing apparel;" etc., meaning that if "any" named item is sold on one day, it is illegal to sell "any" named item on the other day. The statute does *not* say to the merchant that he may not sell clothing, or sell clothing accessories, or sell wearing apparel on consecutive days. The effect of separating each article between the semicolons and applying the prohibition only to consecutive day sales of a separate article, would be to have the Legislature permit a merchant to sell watches on Saturday and clocks on Sunday, blinds and draperies on Saturday and curtains on Sunday, washing machines and radios on Saturday and driers and television sets on Sunday. This would be a nonsensical plan to ascribe to the Legislature.

To judge the reasonableness of this statute, we have before us only the face of the statute with no evidence, but it appears there that the principal plan is to close mercantile establishments and department stores on Sunday. This is the reason for the broad list of commodities, the injunction process, and the provision in Sec. 5 that the statute applies only to those "engaged in the business of selling such item[s]." The merchant is given a choice between Saturday and Sunday, but who will choose to close on Saturday except the Sabbatarian? Defendants plead that this suit is an attempt to prevent them "from remaining open on Sundays." Surely Saturday is still the far better day for sales than is Sunday.

The most important feature of Article 286a, in practical effect, is Sec. 4 which authorizes an injunction to enforce the prohibition of the statute. Without this provision, the sanction of Article 286 is a fine of no more than $50. That sanction is not effective for the considerations of large businesses and busy prosecutors. Defendants plead that this injunction is an attempt to prevent them "from remaining open on Sundays." Indeed, that is the effect of the statute and the intent of the injunction suit. Without Article 286a the Sunday sale of all of these commodities would be prohibited by Article 286, and the defendants would be in violation of that law were they then to engage in the activities which they would protect by appeal to the Constitution. Apparently they are not seriously troubled by the prohibitions of the law in the absence of the injunctive process.

Sunday closing laws have been attacked vigorously, both in and out of the courts, for discriminating against persons whose religion requires them to take a day of rest on some day of the week other than Sunday. McGowan v. Maryland, 366 U.S. 420, 512, 81 S.Ct. 1101, 1153, 6 L.Ed.2d 393, 448; Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563; Mann and Garfinkel, The Sunday Closing Laws Decisions—A Critique, 37 Notre Dame Lawyer 323 (1962); Barron, Sunday in North America, 79 Harv.L.Rev. 42 (1965). By provision in Article 284, Texas has long permitted one to labor on Sunday if he actually observes another day of rest

for religious purposes. The choice of Saturday or Sunday for the sale of the articles enumerated in the current statute should, at least, remove objections on grounds of religion made by the Sabbatarians.

Since the basis of constitutionality of Sunday closing laws has often been said to be the achievement of a single day of rest for all the family, and for the bulk of the community, it is understandable that opponents would argue that the purpose is breached by allowing merchants a choice between two days. When the question came before the Supreme Court of Michigan in Arlan's Department Stores, Inc. v. Kelley, 374 Mich. 70, 130 N.W.2d 892 (1964), three justices found this feature fatal to the statute and three justices upheld it in this respect. The Supreme Court of Minnesota in State v. Target Stores, Inc., 279 Minn. 447, 156 N.W.2d 908 (1968), found no constitutional defect here, but only "a legislative attempt to alleviate the indirect religious burden upon Sabbatarians."

■ The objective of one day a week surcease from commerce is served by this statute. That surcease has never been unanimous, for exceptions are always allowed. The Legislature was entitled to expect that Article 286a would yield Sunday operations only by Sabbatarians and perhaps an occasional small storekeeper.

## EQUAL PROTECTION

■ Defendants argue that they are the victims of discrimination, and are denied equal protection of the law, because the statute raises the penalty and threatens an injunction only against those who are in the business of selling the particularly enumerated articles. This same argument was put forward and answered in Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 589, 81 S.Ct. 1135, 6 L.Ed.2d 551, 557. The Pennsylvania statute under consideration imposed a higher penalty for the Sunday sale of named commodities, which were almost exactly the same as those named in Article 286a. The U. S. District Court had found that substantial surburban retail businesses had triggered large scale violations of the Pennsylvania general Sunday closing law, and that the small fine of the older law "was inadequate to deter the Sunday opening of large retail establishments which could easily absorb such small fines as an incidental cost of doing a profitable business. Moreover, it appeared that the types of commodities covered by this new enactment are principal categories of merchandise sold in these establishments which have made the problem of Sunday retail selling newly acute." The Supreme Court held that it was within the power of the state legislature to have concluded that these businesses were particularly disrupting and that their violation of the law was of a different dimension, requiring a different remedy. Mr. Justice Frankfurter, in his concurring opinion, upholds the statute because "it singles out the area where a danger has been made most evident, and within that area treats all business enterprises equally. That in so doing it may have drawn the line between the sale of a sofa cover, punished by a hundred-dollar fine, and the sale of an automobile seat cover, punished by a four dollar fine, is not sufficient to void the legislation." 366 U.S. 541, 81 S.Ct. 1197, 6 L.Ed. 2d 465.

The Supreme Court of North Carolina upheld an ordinance which forbade the sale of enumerated commodities very similar to those of Article 286a, saying: "It is both reasonable and practical to require people to do their serious shopping for clothing, furniture, automobiles, household and office appliances, hardware, and building supplies on weekdays." Charles Stores Company, Inc. v. Tucker, 263 N.C. 710, 140 S.E.2d 370 (1965).

Courts have on occasion invalidated statutes of this nature by doing as the defendants have done in their briefs, holding up the prohibition against the sale of a

camera as against the absence of such a prohibition against the sale of camera film and calling for a showing of a distinction related to a day of rest or the public welfare. However, the clear majority of the cases uphold statutes against such attack so long as the statutory scheme, viewed as a whole, is a valid one and so long as it treats all merchants alike without discriminating among competitors. If no one is allowed to sell automobiles, for example, the law is not regarded as discriminatory. Anno.: Validity of Discrimination by Sunday Law Between Different Kinds of Stores or Commodities, 57 A.L.R.2d 975.

In Watts v. Mann, 187 S.W.2d 917 (Tex. Civ.App.1945, writ ref'd), the court had before it the constitutionality of Article 4646b, Vernon's Ann.Civ.St., which authorized an injunction against one who made three usurious loans within a period of six months. It was there argued that the law discriminated in favor of usurers who made fewer loans. The court held that it was entirely proper for the Legislature to treat the more serious threat to the law differently from the casual violation. It was pointed out that the pleading of the lenders themselves showed that prior usury laws were ineffective as to the operations of those lenders and that the injunction law was essential. The same can be said of the case at hand, where defendants plead that the public wants to buy from them on Sunday and will be served if the court does not interfere.

## VAGUENESS

The defendants say that the prohibited commodities are set forth in terms so vague and indefinite as to render the statute unconstitutional. Constitutional due process requires that the prohibition of a penal statute must be understandable to a person of common intelligence. Defendants argue that the descriptions of commodities in this statute are so uncertain that the merchant who wants to comply with the law cannot know how to do so.

However, virtually all of these terms are common words which will be understood by any merchant. If a marginal or questionable case could be posed for the application of the word "hardware," for example, this would be no ground for vitiating an entire legislative enactment. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951).

Various types of Sunday closing laws in many states for many years have prohibited sales by the use of words very similar to those used in Article 286a. They have been upheld against attack for vagueness. Charles Stores Company, Inc. v. Tucker, 263 N.C. 710, 140 S.E.2d 370 (1965); State v. Solomon, 245 S.C. 550, 141 S.E.2d 818, 14 A.L.R.3d 1277 (1965); State ex rel. Eagleton v. McQueen, 378 S.W.2d 449 (Mo.Sup.Ct.1964); Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135; 6 L.Ed. 2d 551; Anno.: Validity of Sunday Law or Ordinance as Affected by Vagueness, 91 A.L.R.2d 763.

## POLICE POWER

The defendants also contend that Article 286a, by interfering with their lawful business, takes their property without compensation, declares a nuisance where there is none, and deprives them of property without due process of law. These contentions are without merit if the statute is a valid exercise of the police power of the state. The Constitution does not require that compensation be paid for loss occasioned by the exercise of the police power. State v. Richards, 157 Tex. 166, 301 S.W.2d 597 (1957).

It is true that the Legislature may not validly declare something to be a nuisance which is not so in fact, but that depends upon the question of whether that which is declared to be a nuisance endangers the public health, public safety, public welfare, or offends the public morals. In

Ex Parte Hughes, 133 Tex. 505, 129 S.W. 2d 270 (1939), the Supreme Court held that no injunction could be granted to stop the relator from collecting usury, since the laws of the state did not then define usury as a nuisance, either public or private. The Legislature then enacted a special statute against usurious lending and provided for an injunction for its enforcement. The statutory injunction was upheld in Watts v. Mann, 187 S.W.2d 917 (Tex.Civ.App.1945, writ ref'd). If the Legislature may prohibit an act, it may authorize an injunction against that act.

Thus we are brought back to the question of the police power of the state, which turns upon the question of whether there is a reasonable relation between Article 286a and the health, recreation and welfare of the people of the state. It is not the function of the courts to judge the wisdom of a legislative enactment. It is only when a statute arbitrarily interferes with legitimate activities in such a manner as to have no reasonable relation to the general welfare, that this court may rule the statute to be unconstitutional on the grounds with which we are here concerned. With the long precedent for the constitutionality of Sunday closing laws in this State, and with the view we take of this statute as set forth above, we hold it to be validly related to the health, recreation and welfare of the people.

## CAPTION

Defendants say that Article III, Sec. 35 of the Texas Constitution, which requires that the subject of an Act be expressed in its title, is violated in the caption of Article 286a for this reason: the caption says that the subject of the Act is to prescribe one list of items which may not be sold on Saturday and another list of items which may not be sold on Sunday. This is an unlikely construction of the caption. The caption need only state the general subject of the Act; it need not explain the details.

Holding Article 286a to be constitutional against the attacks here made upon it, we reverse the judgment of the trial court and remand the cause to that court for further proceedings.

CALVERT, C. J., and SMITH and GREENHILL, JJ., dissent.

## APPENDIX

Article 286a, Texas Penal Code (Acts 1961, 57th Leg., 1st C.S., p. 38, ch. 15, eff. Nov. 7, 1961. As amended by Acts 1967, 60th Leg., p. 79, ch. 39, § 1, eff. Aug. 28, 1967).

(Caption) An Act to prohibit the sale or offer of sale, on both the two (2) consecutive days of Saturday and Sunday, or the compelling, forcing, or obliging of employees to sell certain named items; providing exemptions; declaring violation to be a nuisance and authorizing persons to apply and obtain injunctions restraining violations of this Act; and declaring an emergency.

Section 1. Any person, on both the two (2) consecutive days of Saturday and Sunday, who sells or offers for sale or shall compel, force or oblige his employees to sell any clothing; clothing accessories; wearing apparel; footware; headwear; home, business, office or outdoor furniture; kitchenware; kitchen utensils; china; home appliances; stoves; refrigerators; air conditioners; electric fans; radios; television sets; washing machines; driers; cameras; hardware; tools, excluding non-power driven hand tools; jewelry; precious or semi-precious stones; silverware; watches; clocks; luggage; motor vehicles; musical instruments; recordings; toys, excluding items customarily sold as novelties and souvenirs; mattresses; bed coverings; household linens; floor coverings; lamps; draperies; blinds; curtains; mirrors; lawn mowers or cloth piece goods shall be guilty of a misdemeanor. Each separate sale shall constitute a separate offense.

Sec. 2. Nothing herein shall apply to any sale or sales for charitable purposes or to items used for funeral or burial purposes or to items sold as a part of or in conjunction with the sale of real property.

Sec. 3. For the first offense under this Act, the punishment shall be by fine of not more than One Hundred Dollars ($100.00). If it is shown upon the trial of a case involving a violation of this Act that defendant has been once before convicted of the same offense, he shall on his second conviction and on all subsequent convictions be punished by imprisonment in jail not exceeding six (6) months or by a fine of not more than Five Hundred Dollars ($500.00), or both.

Sec. 4. The purpose of this Act being to promote the health, recreation and welfare of the people of this state, the operation of any business whether by any individual, partnership or corporation contrary to the provisions of this Act is declared to be a public nuisance and any person may apply to any court of competent jurisdiction for and may obtain an injunction restraining such violation of this Act. Such proceedings shall be guided by the rules of other injunction proceedings.

Sec. 5. Occasional sales of any item named herein by a person not engaged in the business of selling such item shall be exempt from this Act.

Sec. 5a. It is the intent of the Legislature that Articles 286 and 287 of the Penal Code of Texas are not to be considered as repealed by this Act; provided, however, that the provisions of said Articles shall not apply to sales of items listed in Section 1 of this Act which are forbidden to be sold on the day or days named in this Act.

CALVERT, Chief Justice (dissenting).

Any objective evaluation of the constitutionality of Art. 286a[1] should proceed from the incontrovertible premise that the statute is not, as most people are inclined to think, a "Sunday closing law", or even, as the majority of this court has characterized it, a "Sunday (or Saturday) closing law". Rather, as will be demonstrated, it is a "Sunday opening law".

Any suggestion that Art. 286a is a "Sunday closing law", or a "Sunday (or Saturday) closing law", either overlooks or ignores the fact that, by virtue of the statute's provisions, stores in which only the forty-six items or categories of merchandise listed in section 1 are sold or offered for sale may open and engage in business on Sunday under sanction of law for the first time in one hundred years! Moreover, before the enactment of Art. 286a, the opening and operation of such stores and the sale of the listed merchandise on Sunday was absolutely prohibited by Arts. 283 and 286; and but for the enactment of Art. 286a operation of such stores and sale of the listed merchandise on Sunday would still be prohibited by Arts. 283 and 286. And if, as the majority opinion suggests, the sanctions provided in Arts. 283 and 286 were inadequate and "not effective for the considerations of large businesses and busy prosecutors," thus dictating a need for injunctive process, that sanction could easily have been added by the Legislature for inforcement of the existing Sunday closing laws without the necessity of enacting a Sunday opening law.

## INCIDENTAL QUESTIONS

Before writing at some length on my main point of disagreement with the majority, perhaps I should indicate certain incidental points of agreement and disagreement.

I agree with the holding that the pleas of unconstitutionality were pleas in bar and not pleas in abatement, and that the judgment of dismissal was, therefore, improper, and may be treated as meaningless. Texas Highway Department v. Jarrell, 418 S.W.

1. All Article references are to Vernon's Texas Penal Code.

2d 486 (Tex.Sup.1967); Kelley v. Bluff Creek Oil Co., 158 Tex. 180, 309 S.W.2d 208 (1958); 1 Tex.Jur.2d 19–23, Abatement and Revival §§ 3–5. I agree that Rule 71, Texas Rules of Civil Procedure, authorizes us to treat the pleas in abatement as pleas in bar; that the take–nothing judgment may be considered as the only proper judgment, and that we have jurisdiction of the direct appeal.

I agree that we do not have jurisdiction to decide whether section 1 of Art. 286a is applicable only to "persons" or whether it is applicable also to corporations.

I agree that the constitutionality of Art. 286a was not decided in State v. Shoppers World, Inc., 380 S.W.2d 107 (Tex.Sup.1964). To the contrary, the opinion in that case indicates painstaking care that our decision concerned only a proper construction of Section 4a, since repealed.

I disagree with the majority's interpretation of section 1 of Art. 286a. The majority has interpreted the section to mean that if *one*[2] of the enumerated articles of merchandise is sold on Saturday, the merchant is not only prohibited from selling that article on Sunday but is prohibited also from selling on Sunday any of the other forty-five items or categories of items. I suggest that the majority interpretation is not the proper grammatical interpretation of the section. The section provides that "[a]ny person, on both the two (2) consecutive days of Saturday and Sunday, who sells or offers for sale * * any clothing; clothing accessories; * * lawn mowers or cloth piece goods shall be guilty of a misdemeanor." Use of the words "any" and "or" require, in the absence of something indicating a different legislative intent, that the section be interpreted to reads as follows: "Any person who sells *any* clothing on the consecutive days of Saturday and Sunday; *or any* clothing accessories on the consecutive days of Saturday and Sunday; *or any* lawn

mowers on the consecutive days of Saturday and Sunday * * *" The fact that the various items are separated by semicolons rather than by commas does not alter the rule, and I find nothing in the section supporting the majority finding of a different legislative intent. It hardly makes sense to find that the Legislature thought that a seller of motor vehicles on Saturday might sell bed coverings or household linens on Sunday and that he should be punished if he did. If the Legislature had intended to make a person selling one of the items on Saturday subject to penalties if he sold another on Sunday, it could have so provided in very simple language.

## DUE PROCESS

As is apparent from the majority opinion, appellees attack the constitutionality of Art. 286a on a number of grounds. If any one of the grounds of attack is sound, the trial court's take-nothing judgment is correct and should be affirmed. In my opinion the statute is unconstitutional because it operates to deprive appellees of their property without due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States and of § 19, Art. I, Constitution of Texas.

Persons engaged in selling the items of merchandise listed in section 1, Art. 286a, are engaged in a legitimate activity, and a legislative prohibition of the sale of such items, or limitation on the right to sell them, can only be squared with constitutional due process if it is a legitimate exercise of the police power. The legislative prohibition or limitation contained in the statute does not represent a proper exercise of the police power unless there is a reasonable relationship between its proscriptions and the protection of the public health, safety, morals or general welfare. Standards for determining whether such a relationship exists are anything but precise.

---

2. Emphasis mine throughout unless otherwise indicated.

We summarized them in State v. Richards, 157 Tex. 166, 301 S.W.2d 597, at 602 (1957), in these words:

"The line where the police power of the state encounters the barrier of substantive due process is not susceptible of exact definition. As a general rule the power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience as consistently as may be with private property rights. The guarantee of due process does not deprive the state of the right to take private property by the exercise of such power in a proper and lawful manner, but it is essential that the power be used for the purpose of accomplishing, *and in a manner appropriate to the accomplishment of*, the purposes for which it exists. * * *"

Section 4 of Art. 286a declares that the Act's purpose is "to promote the health, recreation and welfare of the people of this state." But, the legislative declaration that the Act's *purpose* is to promote the health, recreation and welfare of the people is not enough; it must appear that there is a reasonable basis for a legislative conclusion that the proscriptions contained in the Act *will in fact* promote or protect the health, recreation and welfare of the people.

"* * * [T]he cases are in complete accord in holding that a mere assertion by the legislature that a statute relates to the public health, safety, or welfare does not of itself bring such statute within the police power of a state. Governmental action does not automatically become reasonably related to the achievement of a legitimate and substantial governmental purpose by mere assertion in the preamble of the legislation in question. Hence, in the exercise of such power, the legislature cannot, by its mere fiat, make that reasonable which is indisputably unreasonable." 16 Am.Jur.2d 546, Constitutional Law § 281.

If the rule were otherwise, "it would always be within legislative power to disregard the constitutional provisions giving protection to the individual." Houston & T. C. R. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, at 653 (1905). The Legislature has "[a] large discretion * * * to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests," State v. Richards, supra; "[b]ut a state may not, under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them. * * * Constitutional protections having been invoked, it is the duty of the court to determine whether the challenged provision has reasonable relation to the protection of purchasers [the public] * * * and really tends to accomplish the purpose for which it was enacted." Jay Burns Baking Co. v. Bryan, 264 U.S. 504, at 513, 44 S.Ct. 412, at 413, 68 L.Ed. 813, 32 A.L.R. 661 (1924).

In the forepart of this opinion I said that Art. 286a was a Sunday opening law rather than a Sunday closing law. Actually, of course, the statute does not speak to the opening or closing of mercantile establishments; it speaks only to the sale or offers for sale of the forty-six items or categories of merchandise. What possible relationship the sale or non-sale of the particular items of merchandise on the consecutive days of Saturday and Sunday can have to the public health, morals, recreation or welfare is not suggested by the State; and I have been unable to conjure up a reasonable relationship in my own mind. I judicially notice, as a matter of common knowledge, that drug stores and grocery stores, which are legally open on the consecutive days of Saturday and Sunday, sell and offer for sale a large number of the listed items on both days; and prohibition of the sale of such items on the two consecutive days does not by law require the closing of such stores. The utter incongruity of an effort to relate the provisions of Art. 286a to pro-

tection of public health, recreation, or welfare is so patent as to be inescapable. Most modern drug stores sell hand mirrors, clocks and flashlights. Mirrors and clocks are listed in section 1; flashlights are not. Is a flashlight "hardware", and thus included in the list of items which may not be sold or offered for sale on the consecutive days of Saturday and Sunday? If it is, how has the public health, morals, recreation or welfare been benefited by a statute which, because he sold a flashlight on Saturday, prohibits the merchant from selling a mirror or clock, or even another flashlight, on Sunday? Being uncertain myself of the relationship between the proscriptions of Art. 286a and the health, recreation and welfare of the people, which may have been in the legislative mind, I turned for assistance to the brief filed in this court on behalf of the State. I found there only this relevant statement:

> "Obviously, Article 286a, Texas Penal Code, relates to many things for the good of the public generally. The act is calculated to decrease the number of mercantile establishments that remain open both Saturday and Sunday, thus relieving traffic congestion and affording more families a day for family recreation and other activity when all family members can be present. Thus by reducing traffic congestion, affording families an opportunity to relax together at a common time the public health, welfare and recreation is benefited. This brief will not be lengthened by reciting the many public benefts Article 286a, Texas Penal Code is calculated to give the public generally."

Laws which reduce traffic congestion and laws which afford family members an opportunity to relax together at a common time undoubtedly have a reasonable relationship to public health, recreation and welfare; but, can it reasonably be said that Art. 286a will do either of these things?

The State's argument of public benefits is premised upon the statement that "[t]he act is calculated to decrease the number of mercantile establishments that remain open on both Saturday and Sunday * * *." The premise seems clearly to be false. Under the law as it existed at the time Art. 286a was enacted, no stores which dealt solely in some or all of the merchandise listed in section 1 could legally be open for business on Sunday. Art. 283 prohibited labor in the stores and Art. 286 prohibited any merchant or dealer in the merchandise from permitting his place of business "to be open for the purpose of traffic." If we assume that, with Art. 286a in effect, those persons who deal solely in some or all of the listed merchandise, and those persons who could not operate their places of business profitably on both days without selling some of the listed items of merchandise, would be forced by economic necessity to keep their places of business closed on either Saturday or Sunday, perhaps we could reasonably conclude that the Act is calculated to reduce the number of mercantile establishments which remain open on Saturday. Quite obviously, however, it is calculated to increase the number of establishments which remain open on Sunday, since, prior to Art. 286a, none was legally open on Sunday. The question thus posed by the State's argument is whether an Act authorizing Sunday operation of business establishments which, theretofore, were legally open only on Saturday, is calculated to reduce traffic congestion and to afford more family members a common time of relaxation. I think not.

Before enactment of Art. 286a, weekend shoppers for any one or more of the forty-six items listed in section 1 were required to do their shopping on Saturday and had a choice of shopping at any store dealing in the listed merchandise. A decrease in the number of stores open on Saturday may be calculated to relieve traffic congestion on that day at those points where stores are closed, but it is most assuredly calculated to increase traffic congestion on Saturday at those points where stores choose to remain open on that day. Moreover, the mere closing on Saturday and opening on Sunday

of some of the affected stores is calculated to create traffic congestion on Sunday in areas where none has existed before on that day. Finally, the closing on Saturday and opening on Sunday of some of the affected stores is calculated to increase Sunday traffic congestion, more than proportionately, by bringing once again into the stream of traffic all of those shoppers who did not find merchandise to their liking, at prices to their liking, on Saturday. In so far as traffic congestion is concerned, the statute is thus calculated to have an effect of aggravating the evil it allegedly corrects. Perhaps the best evidence that the State's traffic-reduction argument is without merit is that the majority of this court has declined to embrace or approve it.

The idea that the statute is calculated to afford more family members an opportunity to relax together at a common time seems altogether fanciful. The same argument has been universally used by courts to support and sustain the validity of Sunday closing laws—they provide a common day of rest when all family members can come together for relaxation and recreation. It is difficult to see how the argument can now be used to support and sustain a Sunday opening law which is calculated to result in some members of families working on Saturday and resting on Sunday while other members rest on Saturday and work on Sunday. The practical effect of the statute in this respect appears to be just the reverse of its stated purpose.

Just as with the traffic-reduction argument, the majority has also declined to embrace or approve the State's common-day-of-rest argument. Indeed, the majority has rejected as applicable here the common-day-of-rest philosophy, so eloquently pervading the majority and concurring opinions in the four 1961 Supreme Court Sunday closing law cases. Instead, the majority has invented a "one-day-a-week-surcease-from-commerce" philosophy, and suggests that the due process attack is without validity because the new philosphy should be more satisfactory to Sabbatarians.

Relief of religious burdens may avoid complaints by Sabbatarians on religious grounds, but I am at a loss to understand how relief of such burdens can create a reasonable relation between the statute's proscriptions and the public health, recreation and welfare. I will examine this matter in somewhat greater depth in analyzing the 1961 Supreme Court cases.

As requiring a different result from the one I have reached, the State has relied primarily upon four cases decided by the Supreme Court of the United States, to wit: McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961); Two Guys from Harrison-Allentown v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Braunfield v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed. 2d 563 (1961). The first case involved the validity of the Maryland Sunday laws. They proscribed all labor, business and other commercial activities on Sunday, with certain exceptions such as sale of foods, drugs, newspapers and gasoline, and certain other exceptions in particular localities. In the second case, the Court considered the validity of the Massachusetts Sunday laws which forbid the keeping open of shops and the doing of any labor, business or work on Sunday, with certain exceptions. A Pennsylvania law was under attack in the last two cases. It provides that whoever shall sell on Sunday certain items of merchandise shall be subject to a fine. The items listed are almost identical with some of those listed in section 1 of Art. 286a. The Supreme Court upheld the validity of the statutes of the three states against almost every conceivable constitutional attack, including violation of due process. It is to be noted, however, that the Maryland and Massachusetts statutes are true Sunday closing laws, comparable to the Texas statutes before enactment of Art. 286a, and that the Pennsylvania statute was considered as having the effect of a Sunday closing law. Notice should be taken at this point that crucial to the Court's decisions

was the common-day-of-rest philosophy. This, said the Court over and over again, was the sustainable *purpose* of the various laws.

In McGowan v. Maryland, supra, the Court said:

"The present purpose and effect of most of them [Sunday Closing laws] *is to provide a uniform day of rest for all citizens * * *.*" 366 U.S., at 445, 81 S.Ct., at 1115.

"* * * It is true that *if the State's interest were simply to provide for its citizens a periodic respite from work,* a regulation demanding that everyone rest one day in seven, leaving the choice of the day to the individual, would suffice.

"However, the State's purpose is not merely to provide a one-day-in-seven work stoppage. In addition to this, the State seeks to set one day apart from all others as a day of rest, repose, recreation and tranquility—a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which there exists relative quiet and disassociation from the everyday intensity of commercial activities, a day on which people may visit friends and relatives who are not available during working days." 366 U.S., at 450, 81 S.Ct., at 1118.

"Obviously, a State is empowered to determine that a rest-one-day-in-seven statute would not accomplish this purpose; that it would not provide for a general cessation of activity, a special atmosphere of tranquility, a day which all members of the family or friends and relatives might spend together. Furthermore, it seems plain that the problems involved in enforcing such a provision would be exceedingly more difficult than those in enforcing a common-day-of-rest provision.

"Moreover, it is common knowledge that the first day of the week has come to have special significance as a rest day in this country. People of all religions and people with no religion regard Sunday as a time for family activity, for visiting friends and relatives, for late sleeping, for passive and active entertainments, for dining out, and the like. * * *" 366 U.S., at 451, 81 S.Ct., at 1118.

If the Supreme Court of the United States has correctly stated the purpose of laws requiring the closing of mercantile establishments on one day a week, that purpose can be served only by laws which require closing on Sunday; it cannot be served by laws which give a merchant a choice of closing on *any* day of the week or on *another specific day* of the week. It follows that the proscriptions of Art. 286a have no reasonable relation to the health, recreation or welfare of the people; and, therefore, that the Article is an arbitrary exercise of the police power, and should be declared unconstitutional.

SMITH and GREENHILL, JJ., join in this dissent.