ROWLEY v GARVIN

Docket No. 182277. Submitted August 8, 1996, at Detroit. Decided February 21, 1997, at 9:35 A.M.

Thomas R. Rowley and Jennifer Garvin were granted a judgment of divorce in the Calhoun Circuit Court, and Jennifer was granted custody of the parties' minor daughter, Laura. The judgment was amended thereafter to require Thomas to make support payments for Laura until she attains the age of eighteen years or graduates from high school, whichever occurs last. Laura dropped out of high school, moved into Jennifer's parents' home, and began taking adult education classes to earn credits to receive her high school diploma. Thomas stopped making support payments when Laura turned eighteen, and Jennifer petitioned the court for an order requiring Thomas to pay postmajority support for Laura under MCL 552.16a; MSA 25.96(1) on the basis that she was a full-time student. The court, James C. Kinglsey, J., conducted a hearing and, using the local school board's criteria rather than the criteria set forth in the State School Aid Act, MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t), under which Laura would be considered a part-time student, found that Laura was a full-time student. Thomas appealed by leave granted from the court's order requiring Thomas and Jennifer to continue paying support for Laura until she reached the age of 19½.

The Court of Appeals *held*:

1. The trial court erred in applying a local school district's definition of the term "full-time" student for purposes of granting support under MCL 552.16a; MSA 25.96(1) rather than applying the definition of "full-time" set forth in the State School Aid Act, MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t).

2. The trial court's decision that each local school district's definition of the term "full-time" student may be used to interpret the term "full-time" student in the statute authorizing postmajority support, MCL 552.16a; MSA 25.96(1), would render the statute unconstitutional because it would be an improper delegation of a legislative power to the school districts. The Legislature did not intend to permit local school districts to define the term for purposes of postmajority support.

3. The State School Aid Act, MCL 388.1601 *et seq.*; MSA 15.1919(901) *et seq.*, stands in pari materia with the postmajority support statute, MCL 552.16a; MSA 25.96(1). Reading the two statutes together indicates that the court should have used the definition for determining a "full-time" student set forth in MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t). Application of that definition indicates that Laura was not a full-time student for purposes of the postmajority support statute.

4. The Court of Appeals cannot address on appeal Jennifer's assertion that Thomas was under a contractual obligation to pay Laura's support pursuant to the amended divorce judgment because the trial court failed to address the issue.

Reversed and remanded.

1 CONSTITUTIONAL LAW — STATUTES — DELEGATION OF LEGISLATIVE POWERS.

The Legislature may not delegate legislative power to each county school board to change a law to suit its own purposes or give it unlimited choices regarding when and how to apply the law; the Legislature cannot permit the deciding body effectively to determine or alter policies of statewide concern.

2. STATUTES — JUDICIAL CONSTRUCTION.

The Legislature is presumed to be aware of existing laws when promulgating new laws; courts may not assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute and then, on the basis of that assumption, apply what is not there.

3. DIVORCE — POSTMAJORITY CHILD SUPPORT — WORDS AND PHRASES — FULL-TIME STUDENT.

The State School Aid Act and the postmajority support statute stand in pari materia because both provide financial support for the benefit of full-time students; the Legislature intended that the definition of a "full-time" student contained in the State School Aid Act be used to determine whether a person is a "full-time" student for purposes of the postmajority support act and did not intend to permit local school districts to define the term "full-time" student for purposes of the postmajority support act (MCL 388.1606[4][t], 552.16a; MSA 15.1919[906][4][t], 25.96[1]).

*Moore & Marsh* (by *Mary M. Moore*), for the plaintiff.

*Tuck, Garrison & Moore* (by *Robert C. Tuck*), for the defendant.

Before: TAYLOR, P.J., and MARKEY and N. O. HOLOWKA*, JJ.

PER CURIAM. Plaintiff appeals by leave granted from the trial court's postdivorce order requiring plaintiff and defendant to continue paying child support for their daughter, Laura, born in June 1976, until she reached the age of 19½ years old. The trial court found that the daughter qualified for continuation of child support as a "full-time student" pursuant to MCL 552.16a; MSA 25.96(1). We reverse and remand.

Plaintiff and defendant were married in 1968. The parties were divorced on August 4, 1983, with defendant mother being granted custody of Laura. The parties' divorce judgment was modified several times over the ensuing years. On November 25, 1986, the judgment was amended to include the following provision:

> IT IS FURTHER ORDERED that commencing December 19, 1986, the Plaintiff, Thomas Richard Rowley, shall pay to the Friend of the Court for the support and maintenance of the minor child, Laura Ann Rowley, the sum of Thirty-nine ($39.00) Dollars per week, until said child shall attain the age of eighteen years or *graduate from high school*, whichever event shall occur last, or until such time as public assistance benefits shall be received by any party on behalf of either of the minor children of the parties, or until further Order of this Court. [Emphasis added.]

Laura dropped out of the regular high school curriculum in the 1993-94 academic year. She moved out of defendant's home in August 1993 and into defendant's parents' home. Laura began taking classes in the Albion adult education program in September 1993 in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

order to complete the nineteen credits she needed to receive her high school diploma. For every two classes that Laura took, she received one credit.

In the fall semester of 1993, Laura took three classes, but withdrew from two, and received an additional one-half credit for tutoring. During the 1994 spring semester, Laura took five courses. In the fall, Laura attended three classes for a total of eleven hours a week.[1] She also received course credit for outside employment. If she continued with this course schedule, Laura expected to graduate and receive her diploma in June 1995, at age nineteen.

In October 1994, after plaintiff stopped making support payments, defendant filed a petition requesting postmajority support for Laura. She argued two theories: first, that the November 1986 amendment of the parties' divorce judgment represented a contractual obligation for plaintiff to continue paying support until Laura actually obtained her high school diploma, no matter how long it took; and second, that MCL 552.16a; MSA 25.96(1) authorized the continuation of support until Laura reached the age of nineteen years and six months of age. At a December 1994 evidentiary hearing regarding this petition, John Freiberger, the adult education coordinator for the Albion Public Schools, testified that the state requires the school district to provide courses and graduation requirements for adult education that are similar to the K-12 program that the district offers. According to Freiberger, the local school board and adult education department has, in the past, established the number

---

[1] Laura took classes that semester on Monday through Thursday afternoons from 12:30 to 2:30 P.M., and on Wednesday evenings for four hours.

of courses a student may take in the adult education program. If an adult education student takes four courses, the district considers that student to be "full-time." Therefore, Freiberger testified that because Laura was earning credit for a total of four courses (three classes and additional credit for her employment), Laura was considered a full-time student. On cross-examination, however, Freiberger admitted that no written policy existed regarding the "full-time" status of adult education students.

The deposition of Kenneth Walsh, supervisor of Adult and Community Education for the State Department of Education, was also admitted into evidence at the hearing. Walsh testified that a full-time student, as determined by the State School Aid Act, MCL 388.1601 *et seq.*; MSA 15.1919(901) *et seq.*, is one who takes *900 hours of instruction over the course of a 180-day school year.* See MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t).[2] Walsh opined that Laura's current

---

[2] MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t), which became effective on October 1, 1995, pursuant to 1995 PA 130, reads in pertinent part:

> For the purposes of this subsection, full-time equated memberships for pupils in grades 1 to 12 shall be determined by dividing the number of class hours scheduled and provided per year per pupil by 900 for 1994-95, 990 for 1995-96 and 1996-97, 1,035 for 1997-98 and 1998-99, and 1,080 for 1999-2000 and succeeding fiscal years.

Notably, before the trial court made its decision in December 1994, the State School Aid Act had been amended pursuant to 1993 PA 175, effective October 1, 1993, to read as follows:

> For the purposes of this subsection, full-time equated memberships shall be determined by dividing the number of class hours scheduled and provided per year per pupil by 900. [MCL 388.1606(4)(j); MSA 15.1919(906)(4)(j).]

This is the language that Walsh was presumably relying upon in his deposition.

schedule of 12 class hours a week over the course of approximately 36 weeks (representing September 1 to June 1), would total only 432 hours. Therefore, Laura should be considered a part-time student. Walsh further testified that the State School Aid Act's definition of a full-time student is used primarily for the purpose of providing financial assistance to local school districts. He admitted that a local school board could depart from this definition when categorizing students for its own purposes, but that when reporting the number of full-time students it claimed for assistance purposes, the school board was required to use the State School Aid Act's definition of "full-time."

At the conclusion of the hearing, the trial court found that Laura was a full-time student because "as a legal matter the local definition prevails over the state principles." The court also stated that in order to receive postmajority support, the child must reside on a full-time basis with the payee of support, MCL 552.16a; MSA 25.96(1), so the court ordered both parties to pay support to defendant's parents in an amount agreed upon by the parties or, in the absence of an agreement, calculated by the friend of the court. The court did not, however, address defendant's assertion that the November 1986 amended divorce judgment constituted a contractual obligation requiring plaintiff to pay support for Laura until she obtained her diploma. This Court granted plaintiff's application for leave to appeal, and we reverse.

As the sole issue on appeal, plaintiff asserts that the trial court erred in applying a local definition of the term "full-time" student for purposes of MCL 552.16a; MSA 25.96(1) rather than applying the definition of "full-time" set forth in the State School Aid

Act, MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t). With respect to this issue of first impression and upon review de novo, we agree. See *Gilson v Dep't of Treasury*, 215 Mich App 43, 49; 544 NW2d 673 (1996); *Allen v Farm Bureau Ins Co*, 210 Mich App 591, 595-596; 534 NW2d 177 (1995).

Plaintiff and defendant were ordered to pay postmajority support for Laura[3] pursuant to MCL 552.16a; MSA 25.96(1), effective October 10, 1990, which provides:

(1) The court may order support for a child pursuant to this chapter to provide support after the child reaches 18 years of age as provided in this section.

(2) Beginning on the effective date of this section, the court may order support for the time a child is *regularly attending high school on a full-time basis with a reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the payee of support* or at an institution, *but in no case after the child reaches 19 years and 6 months of age.* A complaint or motion requesting support as provided in this section may be filed at any time before the child reaches 19 years and 6 months of age.

*(3) A provision contained in a judgment or an order entered under this act before the effective date of this section that provides for the support of a child after the child reaches 18 years of age*, without an agreement of the parties as described in subsection (4), *is valid and enforceable to the extent the provision provides support for the child for the time the child is regularly attending high school on a full-time basis* with a reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the payee of support or at

---

[3] Because Laura was residing with her grandparents when the November 1986 amended support order was entered, the trial court awarded the payment of support to the grandparents pursuant to *Herpolsheimer v Herpolsheimer*, 318 Mich 200, 207-208; 27 NW2d 530 (1947).

an institution, *but in no case after the child reaches 19 years and 6 months of age.* This subsection shall not require any payment of support for a child after the child reaches 18 years of age for any period between November 8, 1989 and the effective date of this section or reimbursement of support paid between November 8, 1989 and the effective date of this section in those judicial circuits that did not enforce support for a child after the child reached 18 years of age during the period between November 8, 1989 and the effective date of this section.

(4) Notwithstanding subsection (2), a provision contained in a judgment or an order entered under this act before, on, and after the effective date of this section that provides for the support of a child after the child reaches 18 years of age is valid and enforceable if 1 or more of the following apply:

(a) The provision is contained in the judgment or order by agreement of the parties as stated in the judgment or order.

(b) The provision is contained in the judgment or order by agreement of the parties as evidenced by the approval of the substance of the judgment or order by the parties or their attorneys.

(c) The provision is contained in the judgment or order by written agreement signed by the parties.

(d) The provision is contained in the judgment or order by oral agreement of the parties as stated on the record by the parties or their attorneys. [Emphasis added.]

The parties agree that MCL 552.16a: MSA 25.96(1) was enacted in response to our Supreme Court's decision in *Smith v Smith*, 433 Mich 606; 447 NW2d 715 (1989), which found that Michigan law did not provide for postmajority support. *Blakley v Blakley*, 210 Mich App 383, 385-386; 534 NW2d 147 (1995). The parties do not agree, however, on the interpretation of the term "full-time student," which is not defined in the statute. Because reasonable minds can differ

regarding the meaning of this statutory term, judicial construction is appropriate. *Allen, supra.*

First, nothing in § 16a defines the term "full-time" student for purposes of postmajority support. In the absence of any guidance within the confines of this statute, the trial court merely presumed that "the local definition prevails over state principles." We disagree. The Legislature may not delegate legislative power to each county school board to change a law to suit its own purposes, i.e., it may not give the deciding body an unlimited number of choices regarding when and how to apply the law. *Arlan's Dep't Stores, Inc v Attorney General*, 374 Mich 70, 77; 130 NW2d 892 (1964). Indeed, the Legislature cannot permit the deciding body effectively to determine or alter policies of statewide concern. *Id.* Thus, the trial court's decision that each local school board's definition of the term "full-time" student may be used to interpret § 16a would render the statute unconstitutional. *Id.* There would be no consistency or equal application of § 16a were that method of interpretation employed. Given that statutes are presumed to be constitutional and every reasonable presumption in favor of constitutionality must be indulged, we must reverse the trial court's ruling regarding the definition of a "full-time" student pursuant to § 16a.

Second, when promulgating new laws, the Legislature is presumed to be aware of existing laws. *State Treasurer v Schuster*, 215 Mich App 347, 351-352; 547 NW2d 332 (1996). Had the Legislature chosen to permit local school boards to formulate their own "full-time" student criteria when interpreting or applying state statutes, the Legislature could have adopted language similar to the language incorporated into MCL

421.27(b)(4)(a); MSA 17.529(b)(4)(a), which defines a person's "dependents" for purposes of unemployment benefits as follows:

> A child, including stepchild, adopted child, or grandchild of the individual who is under 18 years of age, or 18 years of age and over if, because of physical or mental infirmity, the child is unable to engage in a gainful occupation, *or is a full-time student as defined by the particular educational institution, at a high school, vocational school, community or junior college, or college or university* and has not attained the age of 22. [Emphasis added.]

MCL 552.16a; MSA 25.96(1) contains no similar language permitting "the particular educational institution" to define the term "full-time student." We may presume, therefore, that in the absence of similar enabling language, the Legislature did not intend to permit local school districts, as in the case at bar, to define the term "full-time" student for purposes of postmajority support. See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.").

Third, we believe that the State School Aid Act, MCL 388.1601 *et seq.;* MSA 15.1919(901) *et seq.,* stands in pari materia with the postmajority support statute given that both statutes provide financial support, albeit to different entities, for the benefit of full-time students. This Court has repeatedly recognized that statutes relating to the same subject matter or that share common purposes are in pari materia and shall be read together as one law, regardless of whether they refer to one another and were enacted

at different times. *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan (On Remand)*, 217 Mich App 687, 703; 552 NW2d 919 (1996); *Schuster, supra* at 352. Subsection 6(4)(t) of the State School Aid Act, MCL 388.1606(4)(t); MSA 15.1919(906)(4)(t), states that students who take nine hundred hours of instruction over the course of a school year are considered "full-time" equivalent pupils. Under this definition, the State School Aid Act provides state funding to local school districts based upon the number of "full-time" pupils at each school. The school districts apply this aid to pay the education costs of the "full-time" students. Similarly, the postmajority support statute provides financial support for a "full-time" student who is living with a divorced parent in order to continue that child's education irrespective of the divorce. Where, as here, two statutory provisions have a common purpose, we will read the terms of the statutes harmoniously and attempt to consistently carry out the intent of the statutes. *Witt v Seabrook*, 210 Mich App 299, 302; 533 NW2d 22 (1995). Thus, in determining whether defendant's parents, with whom Laura was living while she attended adult education classes, or defendant (if Laura moved back home before she turned nineteen years and six months old) are entitled to receive postmajority support for Laura, the trial court should have used the definition for determining a "full-time" student as set forth in subsection 6(4)(t) of the State School Aid Act.

Applying this definition to the case at bar, we find that Laura was not a "full-time" student under the postmajority support statute, MCL 552.16a; MSA 25.96(1), when she was attending adult education classes because she was taking fewer than nine hun-

dred class hours a school year. We would reach the same result regardless of whether Laura were residing with either plaintiff, defendant, or her grandparents. See *Herpolsheimer v Herpolsheimer*, 318 Mich 200, 207-208; 27 NW2d 530 (1947).

Also, because the trial court failed to address defendant's assertion that plaintiff was under a contractual obligation to pay Laura's support pursuant to the November 1986 amended divorce judgment,[4] and we do not have all the necessary facts before us to resolve this issue in light of MCL 552.16a(3) and (4); MSA 25.96(1)(3) and (4), we will not address it on appeal. Cf. *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 119; 559 NW2d 54 (1996); *Manning v Hazel Park*, 202 Mich App 685, 699; 509 NW2d 874 (1993).

Reversed and remanded to the trial court for entry of an order consistent with this opinion. We do not retain jurisdiction.

---

[4] *Blakley, supra* at 384-387.