*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH ANN GUZAK,

      Plaintiff-Appellee,

v

STEVEN THOMAS OPPENHEIM,

      Defendant-Appellant.

UNPUBLISHED
January 21, 2021

Nos. 349751; 350909; 353913
Genesee Circuit Court
Family Division
LC No. 11-300855-DM

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

These consolidated appeals stem from postjudgment proceedings regarding child support and spousal support payable by defendant to plaintiff.[1] In Docket No. 349751, defendant appeals as of right an order granting plaintiff's motion for attorney fees, costs, and sanctions. In Docket No. 350909, defendant appeals by delayed leave granted an order granting plaintiff's motion for summary disposition of defendant's postjudgment motion for termination of spousal support.[2] In Docket No. 353913, defendant appeals by leave granted a May 11, 2020 uniform child support order requiring defendant to pay postmajority support for the parties' two youngest children. Additionally, Docket No. 353913 deals with a June 8, 2020 order granting plaintiff's motion to dismiss her earlier motion for miscellaneous relief regarding the children (including reevaluation of defendant's child support obligation).[3] For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] These appeals were consolidated on this Court's own motion. *Guzak v Oppenheim*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No. 350909); *Guzak v Oppenheim*, unpublished order of the Court of Appeals, entered July 24, 2020 (Docket No. 353913).

[2] *Guzak v Oppenheim*, unpub order, entered January 29, 2020 (Docket No. 350909).

[3] *Guzak v Oppenheim*, unpub order, entered July 24, 2020 (Docket No. 353913).

## I. BACKGROUND

Pursuant to a 2012 consent judgment of divorce, defendant was required to pay monthly child support, as well as $1,200 per month in spousal support "until Plaintiff becomes employed earning a gross annual income of Thirty-eight Thousand and 00/100 ($38,000.00) Dollars per year . . . ."

Defendant filed a motion to terminate spousal support in July 2018. In his motion, defendant argued he was entitled under MCL 552.28 to petition the court to modify alimony after the judgment, that spousal support was modifiable based on a change in circumstances, and that there had been a change in circumstances justifying termination of his spousal support obligation. Defendant made numerous assertions in this pleading, alleging that plaintiff was currently employed and earning a gross annual income of at least $38,000, that plaintiff was underreporting her taxable income, that plaintiff was hiding income and assets from disclosure, that plaintiff was manipulating her business income to avoid triggering the termination of her spousal support, that plaintiff was intentionally underemployed, that plaintiff was managing multiple rental properties but "electing not to be paid as an employee or contractor of that business venture in order to maintain her alimony payments," that she had recently listed both "homemaker" and "real estate investor" as her occupation on her tax return, and that she continuously resided with David Schaffer, who was her boyfriend and co-owner of several of her investment properties.

Plaintiff opposed the motion and filed her own motion for miscellaneous relief in which she sought sole legal custody of the parties' minor children, suspension of defendant's court-ordered parenting time, and reevaluation of defendant's child support and spousal support obligations.[4] At the time of these motions, only two of the parties' children (LO and KO) were still minors.

In February 2019, plaintiff moved for summary disposition under MCR 2.116(C)(10) with respect to defendant's motion to terminate spousal support. Plaintiff argued that the money she received from her rental properties was "passive" income, rather than "employment" income, and that defendant's spousal support obligations as set forth in the divorce judgment therefore were not terminated as a matter of law. In support of her motion, plaintiff attached an affidavit in which she averred that she had not been employed since the judgment of divorce was entered but that she had received income since 2013 in the form of rent from properties that she owned. However, she averred that she did not participate directly in the operation or management of those properties and that she had "hired a management company to handle the operation and management of these properties for [her]." She further averred that she never signed any employment agreement with any individual or entity and did not receive a W-2.

Defendant opposed the motion and argued that income was a broad concept for spousal support purposes and that the term "gross annual income" in the judgment of divorce encompassed all forms of income, including plaintiff's allegedly passive income. Defendant further asserted that plaintiff's view of "employment" was too "narrow." Additionally, defendant argued that plaintiff had "an ability to work and income from other non-W-2 jobs, which should be included

---

[4] Plaintiff also sought other miscellaneous relief not relevant to the issues on appeal.

in the determination of whether to terminate spousal support, as set out in the Judgment." Defendant contended that the plain language in the judgment of divorce provided that spousal support would terminate once plaintiff obtained the threshold level of income. Defendant filed an affidavit by a CPA, who opined that plaintiff had "substantial unrealized capital gains" and that a "proper account of [plaintiff's] income will exceed $38,000.00 per year for the years 2014 to 2018, and the year 2013 is border-line near $38,000.00." The CPA further averred that this was "not a proper accounting" of plaintiff's income but that a proper accounting would be completed following discovery.

At the hearing on the motion, defendant argued that plaintiff was managing her properties herself and also had a company to help her manage the properties. The trial court requested and accepted the transcript of plaintiff's deposition that defense counsel had conducted.

At plaintiff's March 13, 2019 deposition, she testified that she had acquired a real estate license in January 2019 or February 2019. The license allowed her to purchase and sell real estate for clients under the supervision of a broker. Plaintiff made plans to work as a real estate agent for her real estate broker but needed to complete additional training before she could begin. Although she had originally planned to complete this training, plaintiff had recently suffered what she understood to be two "ministrokes" in February and March and she had not felt well enough since those incidents to pursue this employment opportunity with her real estate broker.

According to plaintiff's deposition testimony, she owned six rental properties in addition to her own residence. Her rental properties were located in Michigan, Florida, and North Carolina. Plaintiff indicated that all but two of these rental properties were rented at the time of her deposition. She explained that one of the Florida properties[5] was not rented but was on the market to be rented. Plaintiff testified that this property had been vacant since some time in 2018 but that it had not been listed for rent immediately after the previous tenants left because plaintiff had to secure a new management company for the property. Plaintiff specifically testified as follows:

Q. Has it been on the market for rent since it was last rented?

A. No, because I had to change management companies. The lady that was taking care of it did a horrible job, and I had to go down there, and I went in January and I had to secure another management company.

And then . . . Oh, that was a nightmare.

So, anyways, then I told them I was coming down with the kids, that we were staying at the house, so it's . . .[6]

_____

[5] Plaintiff testified that she had originally purchased this particular property with Schaffer because she needed a cosigner to be approved for financing. However, he did not invest anything in the property and his name had since been removed from the deed, although he remained a cosigner on the mortgage loan.

[6] All ellipses are present in the original deposition transcript.

*Q*. When did you secure a new rental management company?

*A*. In January.

Plaintiff stated that the same company was currently managing all of her Florida properties.

Plaintiff further testified that her rental property located in North Carolina was also not currently rented and that this property had never been rented since plaintiff acquired it in November 2018. When she was asked why this property was not currently listed for rent, plaintiff answered that she "need[ed] to get a management company down there." Additionally, plaintiff testified that the property had been occupied by two of her friends since January 2019. Plaintiff did not have a written lease with her friends, but they paid plaintiff rent.

Plaintiff also testified about the agreements she had with her management companies, whereby the management companies received a percentage of the rent collected in exchange for managing the properties, as well as a finder's fee for locating tenants.

The trial court issued a written order granting summary disposition in plaintiff's favor with respect to the spousal support issue and determining that spousal support would not be terminated. The trial court reasoned that the judgment of divorce was clear and required defendant to pay spousal support until plaintiff became employed earning a gross annual income of $38,000. It also determined that plaintiff's income was "investment income" and not "employment income." The trial court explained its decision as follows:

> Plaintiff has investment income versus employment income. Although she very recently obtained a real estate license, she has not been employed as such. Based on her deposition testimony, due to a variety of reasons, she does not see that working out.
>
> In reading the transcript of [plaintiff's] deposition, it appears that Defendant's counsel was more focused on form over content. A significant portion of the inquiry was bizarre and not at all outcome determinative.
>
> [Plaintiff] is to be commended for her patience and her attorney for exercising restraint. The underlying motion and the manner in which it was prosecuted borders on harassment.
>
> In the Court's assessment, Defendant's hired gun tax specialist can pontificate to his heart's desire. Investment income is not employment income.

Plaintiff filed a motion under MCL 600.2591(1), MCR 1.109(E)(6) and (7) and MCR 2.265(A)(2), for attorney fees, costs, and sanctions in May 2019, arguing that "(1) the Defendant's Post-Judgment Motion was frivolous in and of itself; and furthermore, (2) that the manner in which it was prosecuted were designed to inappropriately harass, humiliate and embarrass the Plaintiff and caused her to incur unnecessary attorney fees and costs in defending herself."

In this motion, plaintiff claimed that defendant's motion to terminate spousal support was frivolous, essentially because plaintiff believed that rental income was categorically investment

income as a matter of law and plaintiff had always owned rental properties since the divorce judgment was entered. Plaintiff further argued that defense counsel had questioned plaintiff "at length" about the nature of plaintiff's romantic relationship with Schaffer, that such questioning was irrelevant to the issue of plaintiff's rental income, and that this questioning was designed to harass, humiliate, degrade, and embarrass plaintiff. Plaintiff's motion further alleged—without citation to any specific portion of the deposition transcript or other evidence—that defense counsel had "engaged in multiple instances of other unacceptable conduct" during plaintiff's deposition, which included "rolling her eyes at the deponent when she was unsatisfied with a particular answer." Plaintiff additionally alleged without any evidentiary support or citation that "The cumulative effect of Defendant's attorney's conduct toward the Plaintiff caused Plaintiff to break down in tears several times during the three-and-a-half-hour deposition, and Plaintiff required several breaks in order to gather herself and continue the deposition."[7]

A hearing was held on the motion on June 24, 2019. During the course of defense counsel's argument, the trial court interrupted counsel, chastised her for how she conducted the deposition, and announced: "We're gonna have a hearing and see what the numbers are." After further discussion and argument between the trial court and defense counsel, the trial court announced without further explanation or reasoning: "We're gonna schedule a hearing to see what the number of – is gonna be for attorney fees and sanctions." The trial court entered an order stating that plaintiff's motion for attorney fees, costs, and sanctions was granted "for the reasons stated on the record."

In February 2020, plaintiff filed a motion for postmajority child support for LO and KO. Plaintiff alleged that both girls would turn 18 years old in 2020, but would not graduate from high school until June 2021 because they were participating in the Davison Early College program. Plaintiff's counsel represented during the hearing on this motion that through this program, each child would earn both high school and college credits and would also earn an associate degree. Plaintiff alleged that the girls would therefore be attending high school full time after their 18th birthdays and until June 2021, justifying an award of postmajority child support. Plaintiff's counsel further represented at the hearing that the 2016 uniform child support order was supposed to have included postmajority child support but that the box was not checked due to a clerical error.

Defendant opposed the motion. Defense counsel argued at the hearing on the motion:

[T]he statute is clear; it—it indicates that children need to be attending high school on a full-time basis, okay? This program—my understanding, this program basically holds back one high school credit thereby not allowing them to graduate. It's my understanding the girls have sufficient credits to graduate high school; and, yes, this was a unilateral decision to enroll the children in this. [Defendant] believes

---

[7] Our review of the deposition transcript revealed that there was an instance where plaintiff took a break because she was crying and upset. The questioning leading up to the break involved questions about when plaintiff's "ministrokes" occurred and did not involve questions about plaintiff's personal romantic life. We are unable to discern from this record any causal connection between plaintiff's need for a break being a result of improper conduct by defense counsel.

that this decision is not in the girls' best interests but instead [plaintiff's] interest from a financial standpoint.

> The statute is clear that it has to be full time basis. I don't know how the girls can be on a full time basis when they're taking college credit . . . .

The trial court granted plaintiff's motion, ruling as follows:

> All right. Well I—I understand the question's being raised; and the bottom line is that it seems like it would be penalizing the girls for being excellent academic performers. Not everyone is accepted in these programs; they have to demonstrate wherewithal, at the high school level, to be able to not only take but succeed in the college classes. Again, it would economically counter-productive to deny an opportunity for someone to come away with a two year education and degree that would certainly be transferable to a four-year institution particularly when you're not required to pay the long dollar for those two years.
>
> Again, because we're talking about an essential—essentially a clerical error, I believe that under all circumstances it—it is legally appropriate. It just makes common sense to grant Plaintiff's motion in that regard. All right, than [sic] you very much.

After the trial court ordered postmajority child support, plaintiff filed a motion under MCR 2.504 seeking leave to voluntarily dismiss her July 2018 motion for a review of child support and other miscellaneous relief. Plaintiff argued that both children would be 18 years old by August 2020, depriving the trial court of jurisdiction over custody and parenting-time issues, and that the most recent support order had provided for postmajority child support until the children graduated from high school in June 2021. In response, defendant claimed that plaintiff wanted to dismiss her motion because she realized that reassessment of the child support formula would drastically and retroactively reduce defendant's child support obligation to the point that plaintiff would have to reimburse defendant for overpayments since July 2018. The trial court granted plaintiff's motion to dismiss, reasoning that it was within the discretion of the party prosecuting the motion and that defendant had only opposed the motion with an answer rather than his own counterclaim for relief. The trial court also stated that "the crisscrossing of the same issues, the same income tests, the same argument, has been presented to the Court in one form or another on numerous occasions; but, in spite of all that, there does come a time when you do have to say it's finished." Finally, the trial court reasoned that the matter was moot due to the ages of the children.

## II. SPOUSAL SUPPORT (DOCKET NO. 350909)

On appeal, defendant argues that the trial court erred by granting summary disposition regarding spousal support because at a minimum, there exists a question of fact as to whether plaintiff was employed earning $38,000 in gross annual income. Specifically, defendant contends there was a question of fact as to whether plaintiff actively managed her properties—since she hired the management companies and did not even have a management company for one property—and was therefore self-employed. Defendant maintains that the trial court erred by determining as a matter of law that plaintiff only earned passive income and was not "employed"

-6-

for purposes of the judgment of divorce condition regarding spousal support. Defendant also argues that summary disposition was inappropriate because the trial court did not consider defendant's argument that termination of spousal support was called for on the basis of a change in circumstances.

A trial court's ruling regarding summary disposition is reviewed de novo on appeal. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A dispositive motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

A consent judgment of divorce is treated and interpreted as a contract, which presents a question of law that we review de novo. *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017). "Unambiguous contracts must simply be enforced as they are written, absent a handful of extremely unusual circumstances like fraud, duress, or illegality." *Id*. at 453.

The judgment of divorce in this case stated that defendant would pay spousal support to plaintiff "until Plaintiff becomes employed earning a gross annual income of Thirty-eight Thousand and 00/100 ($38,000.00) Dollars per year . . . ."

The trial court resolved the issue whether to grant summary disposition on defendant's motion to terminate spousal support by relying on the term "employed" in the relevant portion of the judgment of divorce and determining that plaintiff had investment income rather than employment income. The judgment of divorce does not define what constitutes employment for purposes of this spousal support condition.

In cases where the contract leaves words undefined, this Court will interpret those undefined words "in accordance with their commonly used meanings." We have held that consulting a dictionary is the means by which courts determine the commonly used meaning of undefined words. See, *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009) (quotation marks and citation omitted).

Here, the trial court concluded that plaintiff merely had "investment income." *Black's Law Dictionary* defines "investment" generally to mean "[a]n expenditure to acquire property or assets to produce revenue; a capital outlay." *Black's Law Dictionary* (11th ed). For the term "investment income," *Black's* directs us to the term "unearned income," which is defined in relevant part as follows: "Earnings from investments rather than labor. — Also termed *investment income*." *Id*. Similarly, "passive income" means "[i]ncome derived from a business, rental, or other income-producing activity that the earner *does not directly participate in or has no immediate control over*." *Id*. (emphasis added).

Both our Supreme Court and this Court have treated the term "investment" in accordance with these definitions. *Freeze v Smith*, 254 Mich 386, 391; 236 NW 810 (1931) ("The placing of

-7-

capital or laying out of money in a way intended to secure income or profit from its employment is an 'investment' as that word is commonly used and understood."); *Matter v Matter*, unpublished per curiam opinion of the Court of Appeals, issued January, 20, 2011 (Docket No. 293421), p 4 ("Investment" is commonly defined as "the investing of money or capital for profitable returns," and "income" is defined as "the monetary payment received for goods or services, or from other sources, such as rent or investment; revenue; receipts." *Random House Webster's College Dictionary* (1991). The term "investment income" plainly refers to monetary payment resulting in potentially profitable returns.").[8]

In contrast to the above reference to unearned income, "earned income" means "[m]oney derived from one's own labor or active participation; earnings from services." *Black's Law Dictionary* (11th ed). In the same vein, *Black's* defines "employment" generally to mean "[t]he quality, state, or condition of being employed; the condition of having a paying job," and additionally includes definitions relating to the "relationship between master and servant" and "[w]ork for which one has been hired and is being paid by an employer." Similarly, *Merriam-Webster's Collegiate Dictionary* defines the words "employ" and "employment" to mean "the state of being employed." *Merriam-Webster's Collegiate Dictionary* (11th ed). Further, "employment" means "activity in which one engages or is employed," and "employ" is synonymous with "occupation, job." *Id*.

Considering the context in which "employed" is used in the divorce judgment, the latter synonymous cross-references are applicable, and the condition contained in the divorce judgment requiring that plaintiff "become[] employed" clearly requires that plaintiff have an occupation or job. In pertinent part, an occupation refers to "an activity in which one engages," or "the principal business of one's life," while job is defined as "something that has to be done," "an undertaking requiring unusual exertion," "a specific duty, role, or function," or "a regular remunerative position." *Id*. Thus, as used in the divorce judgment, the parties required that plaintiff be actively engaged in some activity, business, or undertaking from which she could earn income. Under this understanding, "employment" would also necessarily include being "self-employed," which means "earning income directly from one's own business, trade, or profession rather than as a specified salary or wages from an employer." *Id*.

In this case, there was evidence in the form of plaintiff's assertion in her affidavit that she did not participate directly in the operation or management of her rental properties. However, there was also evidence from plaintiff's deposition testimony that she participated directly in the management of her properties by taking an active, and apparently exclusive, role in hiring and firing the management companies that were responsible for each property. Plaintiff testified that she replaced a management company based on its poor performance and intended to hire a management company for her North Carolina property. Based on this evidence, reasonable minds could differ over whether plaintiff's income from her rental properties was the result of a mere investment of capital that did not require her direct participation or was instead the result of plaintiff's active participation in her own business activity and occupation in which she exerted

---

[8] Unpublished opinions may serve "as a guide because of the limited case law on the subject matter; however, unpublished opinions are not precedentially binding under the rules of stare decisis." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 20 n 16; 672 NW2d 351 (2003).

direct control over the business. As such, it would be reasonable to conclude from this record either that plaintiff had investment income or that she derived income from self-employment. While there is nothing in the judgment of divorce that requires plaintiff become *an employee of an employer* in order to trigger the condition, it is also true that the term "employed" would not be satisfied by evidence that plaintiff merely derived income from passive investment activity that did not require her labor, direct participation, or active management and control. However, the trial court, by concluding that plaintiff's income was investment income as a matter of law, improperly made a finding of fact and resolved the conflicting evidence, contrary to its proper role in deciding a motion for summary disposition. *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) ("[A] court may not weigh the evidence before it or make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper.") (quotation marks and citation omitted). Hence, the trial court erred by granting summary disposition because there existed a genuine issue of material fact regarding whether plaintiff had become employed. We therefore vacate the trial court's order granting summary disposition and remand for the purpose of conducting an evidentiary hearing on this matter. On remand, the trial court shall also address defendant's alternative argument (which was raised below) that spousal support should be modified or terminated based on a change in circumstances.

### III. ATTORNEY FEES, COSTS, AND SANCTIONS (DOCKET NO. 349751)

Next, defendant challenges the trial court's order granting plaintiff's motion for attorney fees, costs, and sanctions. Defendant argues that the trial court erred by granting plaintiff's motion without making any factual findings or conducting any legal analysis under the applicable statutory and court rule provisions. Defendant further argues that his motion to terminate spousal support was not frivolously filed with the purpose of harassing plaintiff.

Generally, we review a trial court's decision to grant attorney fees in a divorce action for an abuse of discretion and the underlying factual findings for clear error. *Woodington v Shokoohi*, 288 Mich App 352, 369; 792 NW2d 63 (2010). However, a "trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890 (2017) (quotation marks and citation omitted). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

Here, plaintiff moved for an award of attorney fees, costs, and sanctions under MCL 600.2591(1), MCR 1.109(E)(6) and (7), and MCR 2.625(A)(2). The trial court granted plaintiff's motion without referring to any statutory or court rule provisions. The trial court made its ruling in conclusory fashion without any findings of fact, legal reasoning, reference to the standards contained in the provisions cited by plaintiff, or explanation of any kind. Hence, because the trial court failed to make clear the legal basis or underlying rationale for its decision, there is an insufficient record to review. Appellate review does not involve attempting to guess the basis for the lower court's ruling. See *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994) ("Appellate review is limited to issues actually decided by the trial court."); *Woodington*, 288 Mich App at 357, 369, 371-372 (stating remand is proper when a trial court does not provide a sufficient

explanation of its factual findings and reasoning supporting its decision to allow for meaningful appellate review).

Moreover, in light of our ruling regarding plaintiff's motion for summary disposition on the spousal support issue, it cannot be said at this juncture that plaintiff is a prevailing party, see MCL 600.2591 (requiring a party to be the "prevailing party" before being eligible to an award of costs and fees based on the court's finding that the other party's civil action or defense was frivolous); *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522, 534-535; 773 NW2d 57 (2009) ("In light of our decision to reverse the trial court's grant of summary disposition in favor of defendant, defendants no longer qualify as prevailing parties and, for that reason, are not entitled to sanctions under MCL 600.2591."). Nor can it be said that defendant's motion was frivolous, not grounded in fact or law, or initiated for the primary purpose of harassment rather than to obtain the relief

sought i.e., termination of spousal support), see MCR 1.109(E)(5), (6), and (7);[9] MCR 2.625(A)(2);[10] MCL 600.2591.[11]

---

[9] These provisions provide as follows:

> (5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.
>
> (7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

[10] MCR 2.625(A)(2) provides as follows:

> (2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

[11] MCL 600.2591 provides in relevant part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

\* \* \*

-11-

We therefore vacate the trial court's order granting plaintiff's motion for attorney fees, costs, and sanctions without prejudice.

## IV. POSTMAJORITY CHILD SUPPORT (DOCKET NO. 353913)

Next, defendant argues that the trial court erred by ordering postmajority child support for LO and KO when they were not attending high school on a full-time basis as required by MCL 552.605b(2).

"This Court reviews a trial court's decision to modify child support for an abuse of discretion." *Weaver v Giffels*, 317 Mich App 671, 678; 895 NW2d 555 (2016) (applying the abuse of discretion standard to review of an order granting postmajority support). An abuse of discretion "occurs when the outcome is not within the range of principled outcomes." *Butler v Simmons-Butler*, 308 Mich App 195, 224-225; 863 NW2d 677 (2014). Questions of law, including the proper interpretation of statutes, are reviewed de novo. *Weaver*, 317 Mich App at 678. The principles guiding statutory interpretation are well-settled:

> [A] court's primary goal when interpreting a statute is to discern legislative intent first by examining the plain language of the statute. Courts construe the words in a statute in light of their ordinary meaning and their context within the statute as a whole. A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage. Statutory provisions must also be read in the context of the entire act. It is presumed that the Legislature was aware of judicial interpretations of the existing law when passing legislation. When statutory language is clear and unambiguous, courts enforce the language as written. A statutory provision is ambiguous only when it irreconcilably conflicts with another provision or is equally susceptible to more than one meaning. [*Id*. (quotation marks and citation omitted).]

MCL 552.605b provides in pertinent part as follows:

---

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

(1) A court that orders child support may order support for a child after the child reaches 18 years of age as provided in this section.

(2) The court may order child support for the time a child is regularly attending high school on a full-time basis with a reasonable expectation of completing sufficient credits to graduate from high school while residing on a full-time basis with the recipient of support or at an institution, but in no case after the child reaches 19 years and 6 months of age. A complaint or motion requesting support as provided in this section may be filed at any time before the child reaches 19 years and 6 months of age.

The statute does not define what it means to regularly attend high school on a full-time basis. The only evidence before the trial court regarding this issue was a letter, attached to plaintiff's motion, that was from a placement coordinator with Davison High School stating that both children had been accepted into the early college program and would "graduate from high school in June 2021." The parties do not dispute that this program involves enrollment in college courses.

Defendant argues that the so-called "13th year," during which the children will be enrolled in college courses, does not qualify as "high school" as defined by the Legislature. Defendant directs our attention to MCL 388.1604(7), which provides that "High school pupil" means "a pupil in membership in grades 7 to 12, except in a district not maintaining grades above the eighth grade." This Court has previously recognized that "the State School Aid Act [SSAA], MCL § 388.1601 *et seq.*, stands in pari materia with the postmajority support statute given that both statutes provide financial support, albeit to different entities, for the benefit of full-time students." *Rowley v Garvin*, 221 Mich App 699, 708; 562 NW2d 262 (1997) (citation omitted).

Plaintiff argues that the letter from the high school placement coordinator establishes that the children are full-time high school students, and not college students, because the early college program is offered through Davison High School and the children will not graduate from high school until June 2021, during which time the children will still be working toward their high school diplomas. Furthermore, plaintiff directs our attention to MCL 388.1606(4)(q) and argues that the Legislature intended to include, rather than exclude, high school students enrolled in a postsecondary institution within the definition of high school pupil.

MCL 388.1606(4)(q) provides in relevant part that "[i]n determining full-time equated memberships for pupils who are enrolled in a postsecondary institution . . . a pupil is not considered to be less than a full-time equated pupil solely because of the effect of his or her postsecondary enrollment . . . including necessary travel time, on the number of class hours provided by the district to the pupil." However, this provision is not dispositive, considering that MCL 388.1606(4) generally concerns "full-time equated pupils in grades K to 12 actually enrolled and in regular daily attendance . . ." for purposes of determining a district's membership. Thus, Subdivision (q) seems to apply most directly to students in grade 12 or lower who are enrolled in a postsecondary institution. Although the trial court was provided with no *evidence* about the nature or structure of the Davison Early College Program, plaintiff has never appeared to dispute that it involves essentially a fifth year of high school before the children would graduate from high school, at which time they also would have earned an associate degree.

-13-

Plaintiff also argues that the Postsecondary Enrollment Options Act (PEOA), MCL 388.511 *et seq*., indicates that postsecondary students are considered high school students under Michigan law. Plaintiff relies on the act's stated purpose of providing "a wider variety of options to high school pupils by encouraging and enabling qualified pupils to enroll in courses or programs in eligible postsecondary institutions." MCL 388.512. The PEOA, like the SSAA, addresses financial support for the benefit of students, see generally MCL 388.514, and should therefore be read *in pari materia* with the postmajority child support statute. See *Rowley*, 221 Mich App at 708-709 (holding that the SSAA and the postmajority support statute were *in pari materia* because both provided financial support for the benefit of full-time students and "[t]his Court has repeatedly recognized that statutes relating to the same subject matter or that share common purposes are in pari materia and shall be read together as one law, regardless of whether they refer to one another and were enacted at different times.").

The PEOA provides further that an "eligible student may apply to an eligible postsecondary institution to enroll in 1 or more eligible courses offered by that eligible postsecondary institution and, if accepted, may enroll in 1 or more of those courses." MCL 388.514(2). "For an eligible student enrolled in a school district, upon receiving the bill under subsection (4), the school district shall cause to be paid to the eligible postsecondary institution on behalf of the eligible student an amount equal to the lesser of the amount of the eligible charges or the prorated percentage of the statewide pupil-weighted average foundation allowance . . . ." MCL 388.514(5). "This section does not apply to any postsecondary courses in which an eligible student is enrolled in addition to being enrolled full-time in that eligible student's school district or state approved nonpublic school . . . ." MCL 388.514(13). However, "[i]n determining full-time enrollment in a school district under this section or a school district's full-time equated membership under the state school aid act of 1979 . . . for a pupil enrolled in a postsecondary institution *under this act*, the pupil's enrollment in both the school district and the postsecondary institution must be counted as enrollment in the school district and a pupil is not considered to be enrolled in a school district less than full-time solely because of the effect of the pupil's postsecondary enrollment, including necessary travel time, on the number of class hours provided by the school district to the pupil." MCL 388.514(13) (emphasis added).[12]

The term "eligible student" is defined in pertinent part as follows:

"Eligible student" means, except as otherwise provided in this subdivision, a student enrolled in at least 1 high school class in a school district or state approved nonpublic school in this state, except a foreign exchange pupil enrolled under a cultural exchange program or a student who does not have at least 1 parent or legal guardian who is a resident of this state. However, subject to subsection (2), the student must not have been enrolled in high school for more than 4 school years

---

[12] We have quoted from the current version of MCL 388.514 because the recent amendments only involved nonsubstantive, stylistic changes or cross-reference updates with respect to the quoted language relevant to this appeal. MCL 388.514, as amended by 2020 PA 131; MCL 388.514, as amended by 2012 PA 134.

including the school year in which the student seeks to enroll in an eligible course under this act. [MCL 388.513(1)(f).][13]

However, Subsection (2) provides in relevant part:

The superintendent of public instruction shall promulgate rules establishing criteria and procedures under which a student who has been enrolled in high school for more than 4 years but not more than 5 years may be considered to be an eligible student. The rules must address special circumstances under which a student may qualify to be considered an eligible student under this subsection and may limit the number of courses in which a student who qualifies under this subsection may enroll. [MCL 388.513(2).][14]

The superintendent has promulgated such rules. Mich Admin Code, R 388.151 ("These rules establish criteria and procedures under which a fifth-year high school pupil may be eligible for enrollment in courses under the postsecondary enrollment options act . . . ."). Under these rules, "fifth-year high school pupil" means "a pupil who is enrolled in high school for more than 4 years but not more than 5 years as defined by MCL 388.513(2) . . . ." Mich Admin Code, R 388.152(c).

Mich Admin Code, R 388.153 provides as follows:

(1) Subject to subrule (2) of this rule, a fifth-year high school pupil enrolled and in attendance at a school district, intermediate school district, public school academy, or state-approved nonpublic school, including a pupil enrolled and in attendance in an alternative education program operated by a school district, intermediate school, public school academy, or state-approved nonpublic school, may enroll in postsecondary dual enrollment courses under the acts if all of the following requirements are satisfied:

(a) The pupil has not met all of the requirements to be eligible to receive a high school diploma.

(b) The pupil is enrolled in not more than 2 postsecondary dual enrollment courses at 1 time and not more than a total of 4 postsecondary dual enrollment courses during the school year.

---

[13] We have quoted from the current version of the statute even though it represents an amendment that took effect after the trial court's ruling because these two sentences are substantively identical in both versions; the second sentence now uses the word "must" instead of "shall." Compare MCL 388.513(1)(f), as amended by 2020 PA 131, with MCL 388.513(1)(f), as amended by 2018 PA 11.

[14] We have quoted from the current version of this subsection for the same reason as Subsection (1)(f). See MCL 388.513(2), as amended by 2020 PA 131; MCL 388.513(2), as amended by 2018 PA 11.

(c) The pupil is not a foreign exchange pupil enrolled under a cultural exchange program.

(d) The pupil has at least 1 parent or legal guardian who is a resident of this state.

(e) The pupil does not enroll in and receive tuition and fee support for more than 10 courses overall under the acts, including the courses taken when the pupil is a fifth-year high school pupil. This requirement does not apply if there is a written agreement between the pupil's school district, intermediate school district, public school academy, or state-approved nonpublic school and the eligible postsecondary institution to waive this limit.

(2) A fifth-year high school pupil enrolled and in attendance at an early/middle college may enroll in postsecondary dual enrollment courses under the acts if the pupil has not met all of the requirements to be eligible to receive a high school diploma.

An "early/middle college" is defined in relevant part to mean "a public high school designed to allow a pupil to earn both a high school diploma and . . . [a]n associate degree." Mich Admin Code, R 388.152(b)(i).

Although the trial court had a paltry record on which to base its decision, the parties never appeared to dispute that the early college program at issue was such a five-year program involving enrollment in both high school and postsecondary courses and that would end with each child earning both a high school diploma and associate degree. The statutory scheme contemplates such a program. MCL 388.513(2). The parties have also never disputed that the children would not graduate from high school until the end of the five-year program, in 2021. We acknowledge that defense counsel asserted at the hearing that he believed that the children had "sufficient credits" to graduate high school, although he also admitted that the program was structured such that students did not complete their high school requirements until the end of the program. Nonetheless, defendant has not presented any evidence that the children were actually eligible under the early college program to receive their high school diplomas before the end of the fifth year in 2021, or that the children were not otherwise eligible for a fifth year of high school under the program. To be considered a fifth-year high school pupil, a student must not have met all of the requirements to be eligible to receive a high school diploma. Mich Admin Code, R 388.153. The rules also require that a high school student participating in the program during a fifth year of high school take no more than 2 college courses at one time during the fifth school year, no more than 4 such courses in total during that fifth school year, and no more than 10 such courses in total overall. Defendant failed to produce evidence that the children did not qualify for the program

under all the relevant criteria. Defendant has thus failed to demonstrate that the trial court abused its discretion by awarding postmajority support under these circumstances.[15]

## V. VOLUNTARY DISMISSAL OF PLAINTIFF'S MOTION FOR MISCELLANEOUS RELIEF (DOCKET NO. 353913)

Next, defendant argues that the trial court abused its discretion by allowing plaintiff to dismiss her motion for miscellaneous relief over defendant's objection because there had been approximately two years of discovery related to the issue and the dismissal prejudiced defendant by precluding him from litigating the propriety of the child support he paid during that time period. Defendant argues that the trial court committed legal error by granting the dismissal on the ground that defendant had not filed a counterclaim without considering the prejudice to defendant. Defendant further contends that because the motion involved the amount of child support for the period dating back to July 2018, the trial court erred by determining the matter was moot.

MCR 2.504(A) provides:

(A) Voluntary Dismissal; Effect.

(1) By Plaintiff; by Stipulation. Subject to the provisions of MCR 2.420 and MCR 3.501(E), an action may be dismissed by the plaintiff without an order of the court and on the payment of costs

(a) by filing a notice of dismissal before service by the adverse party of an answer or of a motion under MCR 2.116, whichever first occurs; or

(b) by filing a stipulation of dismissal signed by all the parties.

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a dismissal under subrule (A)(1)(a) operates as an adjudication on the merits when filed by a plaintiff who has previously dismissed an action in any court based on or including the same claim.

(2) By Order of Court. Except as provided in subrule (A)(1), an action may not be dismissed at the plaintiff's request except by order of the court on terms and conditions the court deems proper.

(a) If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the court shall not dismiss the action over the

---

[15] Based on our resolution, we need not decide whether there was a clerical error or whether the trial court could award postmajority support based on the alleged correction of a clerical error. Defendant has failed to demonstrate that the trial court abused its discretion in ordering postmajority support under MCL 552.605b.

defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

      (b) Unless the order specifies otherwise, a dismissal under subrule (A)(2) is without prejudice.

As defendant observes, MCR 2.504 involves the dismissal of *actions*, and postjudgment motions in divorce proceedings are governed by MCR 2.119 concerning motion practice. MCR 3.213. At issue here is plaintiff's postjudgment motion for miscellaneous relief, including a review of child support. Therefore, the trial court committed an error of law in dismissing plaintiff's motion under MCR 2.504 on the ground that defendant had not filed a counterclaim because the trial court relied on an improper legal framework in reaching its conclusion. We additionally note that in opposing plaintiff's July 2018 motion for miscellaneous relief, defendant concurred in the need for a review of child support but argued that plaintiff's income should be investigated and factored into the calculation.

Furthermore, contrary to the trial court's conclusion, the child support was not rendered moot by the age of the children because the parties disputed the amount of child support that was owed going back to 2018. See MCL 552.603(2) ("Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support."); *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights. An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief.") (citation omitted).

We therefore vacate the trial court's order dismissing plaintiff's motion with respect to a review of child support and remand for further proceedings.

## VI. ANCILLARY REQUESTS FOR RELIEF

Both parties also ask this Court to exercise its discretion to grant ancillary relief in these appeals. In Docket No. 350909, defendant asks this Court to order reassignment to a different judge on remand. This Court takes judicial notice of the fact that since the filing of these appeals, the trial judge in this matter has retired. Therefore, this issue is moot.[16]

---

[16] Even if we did not conclude this issue moot, defendant would still not be entitled to relief. The order granting defendant's delayed application for leave to appeal limited the appeal to the issues raised in defendant's application and supporting brief. *Guzak v Oppenheim*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No. 350909). Defendant's application in Docket No. 350909 indicated that the sole question presented was whether the trial court erred by granting plaintiff's motion for summary disposition. Because defendant did not raise this issue in his application, it is not properly before this Court and need not be addressed. *Bauer v Saginaw Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 344050); slip op at 14.

-18-

In all three appeals, plaintiff contends that the appellate proceedings are vexatious and asks this Court to award damages under MCR 7.216(C). However, MCR 7.211(C)(8) provides: "A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule." Plaintiff's request for damages was presented in her appellate briefs, rather than a separate motion. We therefore decline to address plaintiff's request under MCR 7.216(C). MCR 7.211(C)(8); *Fette v Peters Const Co*, 310 Mich App 535, 553-554; 871 NW2d 877 (2015).

## VII. CONCLUSION

In Docket No. 350909, we vacate the trial court's order granting summary disposition and remand for the purposes of conducting an evidentiary hearing on this matter and addressing both of defendant's theories for terminating or otherwise modifying spousal support. In Docket No. 349751, we vacate the trial court's order granting plaintiff's motion for attorney fees, costs, and sanctions, without prejudice to any future such motions being pursued. In Docket No. 353913, we affirm the trial court's ruling awarding postmajority support and vacate the trial court's order granting plaintiff's request to voluntarily dismiss her July 2018 motion for a review of child support. We additionally remand for the purpose of resolving the child support issue. Finally, we decline to address the parties' additional requests for ancillary relief that were not properly before this Court.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to award costs in this matter. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

-19-